Joseph F. MASON et al., Plaintiffs,

v.

J. W. MARSHALL and Jack Houston Drilling Company, Defendants.

Civ. A. No. CA-3-6517-D.

United States District Court,
N. D. Texas,
Dallas Division.

July 12, 1974.

Joe E. Vaughan and John D. Gilliland, Dallas, Tex., for plaintiffs.

James S. Robertson, Jr., Dallas, Tex., for defendants.

## MEMORANDUM OPINION

ROBERT M. HILL, District Judge.

The plaintiffs have brought this suit for recission of their purchases of fractional undivided interests in two oil and gas drilling ventures referred to as the "Seven Well" and "Mayes Re-entry" programs which were promoted and operated by the defendants. Plaintiffs have alleged that these interests were unregistered securities which were sold in violation of Sections 5 and 12 of the 1933 Securities Act, Section 10(b) of the 1934 Securities and Exchange Act and Rule 10b–5 promulgated thereunder, and the Blue Sky Laws of Texas and Tennessee. The defendants do not deny that the fractional undivided interests in their oil and gas ventures are "securities," but they urge that plaintiffs' causes of action are barred by limitations, that plaintiffs have waived their right to recission, and that these "securities" are exempt from registration under Section 4(2) of the Securities Act of 1933. Defendants also deny that they have committed any fraud.

## I. *The Facts*

### A. *The Defendants*

Defendant J. W. Marshall, through either the Marshall Pipe and Supply Company or the defendant Jack Houston Drilling Company, has been in the business of selling fractional undivided interests in oil and gas drilling ventures for nearly twenty years. Over the past ten years he admits to ten or fifteen separate ventures in which the primary investors were airline pilots, physicians or individuals who were knowledgeable of the oil business. None of these oil ventures, including those in dispute in the case at bar, was ever registered under the federal securities laws.

The defendant Jack Houston Drilling Company is a limited partnership formed under Texas law in 1970. The limited partners consist of investors who have participated in drilling ventures with Marshall and the general partners consist of Marshall and Jack Houston who is not a party to this suit. The Jack Houston Drilling Company was the issuer of the undivided drilling interests in the Seven Well and the Mayes Re-entry programs.

### B. *The Seven Well Program*

In the summer of 1971 Marshall began to solicit investors for a drilling venture which he designated as the Seven Well program. At a meeting in his office Marshall told a group of potential investors that seven wells would be drilled on leases to be acquired from a geologist who had arranged for their acquisition. The potential investors were shown the general geographical area where the seven wells were to be drilled and were told that Jack Houston Drilling Company would designate the exact locations of the leases and that their drilling rigs would be used in the venture. Subsequently, 29 to 30 investors purchased an undivided fractional interest in the Seven Well program.

### C. *The Mayes Re-entry*

On January 10, 1972, all of the working interests owners in the Seven Well program received a letter from Marshall explaining that a dry hole had been drilled on the first well of the Seven Well program and that a separate program called the Mayes Re-entry was being planned. This letter stated that this new drilling venture "has nothing to do with" the Seven Well program and that the remaining six wells in the Seven Well program would be drilled after the two wells in the Mayes Re-entry program were completed. At trial Marshall testified that he sent an invoice to all the plaintiffs for an interest in the Mayes Re-entry program proportional to their interest in the Seven Well program, *after* he had discussed the program with plaintiff Joseph Mason and had asked Mason to contact the other plaintiffs to determine if they would be interested in the Mayes Re-entry program. The letter of January 10, 1972, and the subsequent invoice was the only contact Marshall had regarding the Mayes Re-entry program with any of the plaintiffs except for Mason. All plaintiffs except Hardin and Houchin paid the full amount of the invoices for the Mayes Re-entry program. Hardin paid nothing and Houchin paid $398.86 of the $1,098.86 invoiced to him.

### D. *The Plaintiffs*

The plaintiffs are R. D. Riley, Joseph H. Mason, R. W. Shirley, P. B. Hardin, Don Houchin, G. L. Mitchell, and K. P. Sisk. All plaintiffs are airline pilots who reside in Texas except for Sisk who is a retired airline pilot and resides in Tennessee. All plaintiffs are hereinafter referred to by their last names.

#### 1. *Riley*

Prior to the Seven Well program, Riley had participated in several successful drilling ventures with Marshall. Marshall invited Riley to the Seven Well program meeting that was held in the summer of 1971. At that meeting Riley took notes concerning the program and examined the plats, geological maps and seismograph material that was related to the program. After that meeting he purchased a 1/64 interest in

the program and later purchased an additional ¹⁄₆₄ interest after he had discussed the tax advantages of the deal with his accountant. Riley testified that his understanding of the tax consequences of the drilling venture was based on his prior dealings with Marshall and that he knew both Marshall and Jack Houston Drilling Company had retained some interest in the Seven Well program.

### 2. Mason

Mason also had participated in drilling ventures with Marshall prior to the Seven Well program. He first learned about the Seven Well program from Riley while playing golf together with Hardin and Shirley. After hearing some more favorable comments from other airline pilots about Marshall's drilling ventures, Mason contacted Marshall and purchased a ¹⁄₆₄ interest in the Seven Well program.

At trial Mason testified that he decided to invest in the Seven Well program as a result of the information relayed to him by Riley and other airline pilots who were at the summer of 1971 meeting. The only information that Mason received from Marshall about the Seven Wells program was that "it was a good drilling prospect"; however Mason testified that because of his experience in other oil ventures with Marshall, he understood that Jack Houston Drilling Company's drilling rigs would be used in the Seven Well program.

Mason also received and accepted a check denoted as payment for "commission" in the amount of $1,098.86 from Marshall, which amount was also the costs of Mason's interest in the Mayes Re-entry program. At trial Marshall testified that the check was a commission for Mason's efforts in soliciting the plaintiffs' investment in the Mayes Re-entry program.

### 3. Shirley

Shirley also learned of the Seven Well program from Riley while they played golf together with Mason and Hardin. Shirley testified that everything he had heard about the Seven Well program was from Riley, Mason, Hardin and other pilots and that he was encouraged to invest in the program when Riley had stated that "he had hit three out of four wells" in a previous drilling venture. At Shirley's request, Mason took him to Marshall's home where they talked briefly about the drilling venture and Shirley then purchased a ¹⁄₆₄ interest in the program. The only facts represented to Shirley by Marshall were that seven wells would be drilled on a 5,000 acre tract.

### 4. Hardin

Hardin learned of the Seven Well program while playing golf with Mason and Riley. Hardin testified that he was looking for a tax shelter and that he told Mason that he had some money to invest and that he wanted an interest in the Seven Well program. The only time Hardin talked to Marshall was when Mason took him to Marshall's house. After a brief conference, Hardin gave Marshall a check for $6,250 for a ¹⁄₆₄ interest in the Seven Well program. Later that same evening Hardin and Marshall got into an argument and Marshall destroyed Hardin's check and told him that he was out of the deal. The next morning, however, at the urging of another airline pilot who had invested in the Seven Well program but who is not a party to this suit, Hardin sent another check which was subsequently accepted by Marshall. Hardin testified that his decision to invest in the Seven Well program was based on what he had heard from other airline pilots who had invested with Marshall.

### 5. Houchin and Mitchell

Houchin and Mitchell learned of the Seven Well program from Mason, Riley and other airline pilots who had invested in oil ventures with Marshall. Both decided to invest in the program prior to meeting Marshall and both testified that all information they received about the Seven Well program was from Mason, Riley and other airline pilots.

### 6. *Sisk*

Sisk, like Mason and Riley, had also participated in drilling ventures with Marshall prior to the Seven Well program. Sisk resided in Tennessee and testified that he had repeatedly called Marshall each time he had flown to Dallas and inquired into possible oil ventures. On one occasion Marshall told Sisk about the Seven Well program and the costs of buying an interest in that program. This was all the information Sisk had when he invested in the Seven Well program and he testified that he had never talked to anyone else about the Seven Well program prior to his investment.

### II. *Section 12(1) Violation*

Plaintiffs allege among other things that the defendants violated § 5 of the Securities Act of 1933, 15 U.S.C. § 77e, in that the defendants offered for sale and sold securities as to which a registration statement was not in effect. Plaintiffs urge that pursuant to § 12(1) of the Act 15 U.S.C. § 77*l* (1), they are entitled to rescind their purchase and recover the consideration paid.

### A. *Limitations*

The defendants assert that plaintiffs' cause of action under § 12(1) of the Act is barred by limitations as provided in § 13 of the Act, 15 U.S.C. § 77m, which reads in relevant part:

> "No action shall be maintained . . . to enforce a liability created under section 77*l*(1) of this title, unless brought within one year after the violation upon which it is based."

This action was filed on November 20, 1972, as to all plaintiffs except Sisk who became a party upon the filing of the amended complaint on or about February 9, 1973. All plaintiffs orally agreed to purchase an interest in the Seven Well program prior to November 20, 1971, and all plaintiffs, except for Houchin, received an invoice for their respective interests prior to November 20, 1971, and paid for their interests before that date. Houchin received an invoice for his interest on December 7, 1971, and he and Mason paid for their interests after November 20, 1971.

It is clear that the limitation period under § 13 begins to run when § 5 is first violated, and § 5 is violated when the mails or interstate commerce are used to offer, sell or deliver an unregistered security. The cases appear to hold that limitation commences to run from the time of the occurrence of the last of these three events. In *Buchholtz v. Renard,* 188 F.Supp. 888 (S.D.N.Y.1960), it was held that the statute of limitations would begin to run from the date of "delivery" of an unregistered security even though a "sale" of an unregistered security had been completed prior to that date.

*Bryant v. Uland,* 327 F.Supp. 439 (S.D. Tex.1971) is cited by defendants as authority to the contrary, but that case is distinguishable. In *Bryant* the only violation of § 5 alleged was a "sale" of an unregistered security and the court in that case held that statute of limitations began to run when the plaintiffs mailed the first installment payment to the defendants. The court rejected the argument that subsequent installment payments expanded concomitantly the statute of limitations and held that limitations began to run at the first stage of the "sale." *Bryant* did not hold that a subsequent "delivery" violation of § 5 would be barred by an expired limitations period for a "sale" violation of § 5.

There are both "offer" and "sale" violations of § 5 involved in this case, and each violation has its own statute of limitations. All of the "offers" in the Seven Well program occurred more than one year before the filing of this case. The fact that the statute of limitations began to run on the "offer to sell" violation does not start the statute of limitations on the later "sale" violation.

A *sale* of a security in Texas is not enforceable unless there is some writing signed by the party against whom enforcement is sought or *unless there is payment,* Tex.Bus. & Comm.Code Ann. § 8.319.

There was no writing in the Seven Wells program and the statute of limitation began to run on plaintiffs' § 5 "sale" cause of action on the date they mailed their checks to Marshall for their respective purchases. This court finds that Hardin, Mitchell, Riley, Shirley and Sisk mailed their checks on the Seven Wells program more than one year before this suit was filed and are barred from asserting their § 12(1) cause of action in regard to the Seven Well program. Houchin and Mason having paid within one year of the filing of this suit are not barred by limitations.

■ Defendants urge these two drilling ventures were one integrated security. There is no evidence that the Mayes Re-entry program was to be part of the Seven Well program and in fact Marshall's letter of January 10, 1972, to the plaintiffs stated that the Mayes Re-entry program "has nothing to do" with the Seven Well program. This court concludes that the Seven Well program and the Mayes Re-entry program were two separate securities. Thus plaintiffs are not barred by statute of limitations on the Mayes Re-entry program.[1]

### B. *Exemption—Private Offering*

As a further defense to the plaintiffs' § 12(1) cause of action, the defendants allege that the offer and sale of interests in the Seven Well program and the Mayes Re-entry program are exempt from registration under the Securities Act of 1933 because they did not involve "any public offering of securities."

■ The leading case in determining what is a non-public or private offering exempt from the registration requirements of § 12(1) is *Securities and Exchange Commission v. Ralston Purina Co.*, 346 U.S. 119, 73 S.Ct. 981, 97 L.Ed. 1494 (1953). In that case the Court set out two criteria for determining the existence of non-public offering: (1) whether the offerees need the protection which the registration affords, and (2) whether they have access to the kind of

information they need. In addition to holding that the burden is on the issuer to prove a non-public offering, the court rejected a numerical test as to what was a "public" offering. Further, the exemption is not dependent on the sophistication of the offerees but whether they had access to all of the information which a registration statement would have provided. *Henderson v. Hayden Stone, Inc.*, 461 F.2d 1069 (5th Cir. 1972); *Hill York Corp. v. American International Franchises*, 448 F.2d 680 (5th Cir. 1971).

■ The plaintiffs, who are all airline pilots, were neither sophisticated investors nor did they have access to the kind of information that a registration statement on a Form S–1 or S–10 would provide. The plaintiffs were thus within the class of investors who needed the protection of the registration requirements. The securities sold to the plaintiffs were not exempt from the registration requirements of § 12(1).

### C. *Liability*

■ Section 12(1) liability is established by proving three elements: (1) no registration covering the securities involved; (2) the parties charged were the persons who sold the securities; and, (3) the mails or facilities of interstate transportation or communication were used in making the sale. All three of the above elements have been proven by the plaintiffs. It is not necessary for the plaintiffs to prove that had they had access to the information they would have relied on that information or that the information would be material to their investment decision. Further, the defenses of "waiver" and "pari delicto" are not available under a § 12(1) claim. *Meyers v. C&M Petroleum Producers*, 476 F.2d 427 (5th Cir. 1973); *Can-Am Petroleum Co. v. Beck*, 331 F.2d 371 (10th Cir. 1964). Liability is absolute under § 12(1) claim. *Lewis v. Walston*, 487 F.2d 617 (5th Cir. 1973).

This court concludes that all of the plaintiffs except Hardin are entitled to rescind

---

1. Hardin did not purchase any interest in the Mayes Re-entry program.

their purchase of oil and gas interests in the Mayes Re-entry program and that Houchin and Mason are entitled to rescind their purchase of oil and gas interests in the Seven Well program.

### V. *Section 12(2) and Rule 10b–5*

Plaintiffs also urge a cause of action pursuant to Section 12(2) of the Securities Act of 1933 and Section 10(b) of the Securities and Exchange Act of 1934. In the pretrial order, as later supplemented, five statements are listed which the plaintiffs allege were untrue statements of material facts in the "prospectuses." The invoice sent to all plaintiffs in late 1971 is alleged to be the prospectus for the Seven Well program and the letter of January 10, 1972, is alleged to be the "prospectus" for the Mayes Re-entry program. One alleged misrepresentation deals with the Seven Well program and the other four statements deal with the Mayes Re-entry program. The pretrial order also lists eleven alleged omissions of material facts, ten of which deal with the Seven Well program and one with the Mayes Re-entry program.

■ Considering the testimony of all the plaintiffs, this court is of the opinion that the invoice was not material to the plaintiffs' decision to purchase an interest in the Seven Well program. The invoice was delivered after each plaintiff had notified Marshall of his decision to participate in the drilling program and all plaintiffs were aware that the leases for the Seven Well program were in the process of being acquired at the time they received these invoices. Further the plaintiffs received interests substantially equal to the interest stated in the invoice and this court is of the opinion that any difference in the overriding royalty burdens of the Seven Well program from that which was represented in the invoices would not be material to a reasonable investor in this oil and gas drilling venture. The additional overriding royalty was necessary in order for Marshall to acquire the remaining tracts for the Seven Well program and it was *after* the plain-

tiffs had acquired their interests in the Seven Well program that Marshall discovered the necessity of burdening the Seven Well program with an additional overriding royalty. The invoice itself was not misleading to the plaintiffs and none of the omitted facts alleged to be material were necessary in order to make the invoice, in the light of all the circumstances, not misleading. The invoice was that which it actually purported to be, *i. e.* a statement billing the plaintiffs for their respective interests in the Seven Well program. This court thus rejects the contention that the invoice was accepted by the plaintiffs as a "prospectus" representing the full extent of all the information necessary to make an investment decision.

This court is also of the opinion that there is insufficient evidence to support the allegation that the alleged *omissions* made the oral representations of Marshall misleading. All the plaintiffs, except Riley, testified that they based their decision to invest in the Seven Well program on what they had heard from Riley and their fellow airline pilots. Other than the representation that there was a good prospect for oil in the Seven Well program, the full extent of Marshall's oral representations were never established by the plaintiffs. It cannot be ascertained from the record precisely what affirmative representations were made by Marshall which were misleading as a result of the alleged omissions. Indeed, many of the statements which the plaintiffs contend were misleading because of the alleged omissions were made by the plaintiffs themselves to each other while flying or playing golf.

■ In order to recover under § 10(b) or § 12(2) it must be shown that statements which became misleading as result of the omissions of material fact were actually made by the defendant or by someone who was "controlled" by the defendant. The preponderance of the evidence does not reflect such a conclusion in this case.

■ Moreover, the court is of the opinion that even if there had been a full disclo-

sure of all facts relating to the Seven Well program, the plaintiffs' investment decisions would have remained the same. All plaintiffs were aware of the speculative nature of an oil and gas drilling venture and their decision to invest in the Seven Well program was made entirely on what they had heard from each other and other airline pilots. *List v. Fashion Park, Inc.,* 340 F.2d 457 (2d Cir. 1965) cert. denied 382 U.S. 811, 86 S.Ct. 23, 15 L.Ed.2d 60 (1965). Marshall did not actually solicit most of the plaintiffs into the Seven Well program, rather they approached Marshall, ready, willing and able to invest. The evidence is not persuasive that had defendants fully disclosed all facts that plaintiffs allege were not disclosed, such information would have caused plaintiffs not to invest. Under these circumstances recovery under § 12(2), § 10(b) and the Texas and Tennessee Blue Sky Laws must be denied.[2]

### VI. *Conclusion*

In conclusion this court is of the opinion that Mason, Houchin, Mitchell, Riley, Shirley and Sisk are entitled to rescind their purchases in the Mayes Re-entry program and that Houchin and Mason are entitled to rescind their purchases in the Seven Well program. These plaintiffs have all made a sufficient tender of their undivided interests by their allegation in their amended complaint. *Stadia Oil and Uranium v. Wheelis,* 251 F.2d 269 (10th Cir. 1957). All other relief sought pursuant to the Seven Well program and Mayes Re-entry program is hereby denied. Plaintiffs' counsel is directed to prepare a judgment not inconsistent with this opinion and submit it to defendants' counsel for approval as to form.

It is so ORDERED.

---

2. It is unnecessary to discuss applicability of the above status to the Mayes Re-entry program since this court is of the opinion that the plaintiffs who did purchase are entitled to rescission of their purchases under § 12(1).