John TEMPLE, Larry A. Calfutti, John G. Boinis, Stephen J. Galluzi, Roy Merritt, R. Scott Morrison, John C. Boinis, George B. Presley, Karen Pugh, and Larry Pugh, Plaintiffs,

v.

L.D. GORMAN and David Thomas, Defendants.

No. 01–8402–CIV.

United States District Court, S.D. Florida.

Jan. 29, 2002.

Michael J. Pucillo, Berman DeValerio Pease Tabacco Burt & Pucillo, West Palm Beach, FL, for plaintiffs.

Jeffrey Allan Hirsch, John Luger McManus, Greenberg, Traurig, Ft. Lauderdale, FL, Terry M. Miller, Duke W. Thomas, Vorys Sater Seymour & Pease,

Columbus, OH, for David Thomas, defendant.

Jeffrey Allan Hirsch, John Luger McManus, Greenberg, Traurig, Ft. Lauderdale, FL, David Eugene Lancz, Akerman Senterfitt & Eidson, Miami, FL, for L.D. Gorman, defendant.

Jeffrey Allan Hirsch, John Luger McManus, Greenberg, Traurig, Ft. Lauderdale, FL, for Steve H. Stevens, defendant.

### ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

LENARD, District Judge.

**THIS CAUSE** is before the Court on the Motion to Dismiss Amended Complaint (D.E.30), filed July 23, 2001, by Defendant David Thomas, and the Motion to Dismiss (D.E.35), filed July 31, 2001, by Defendant Lawrence D. Gorman. Plaintiffs filed a Memorandum in Opposition (D.E.36) on August 20, 2001. Defendant Thomas filed a Reply (D.E.46) on September 28, 2001. Plaintiffs filed a Motion for Leave to file a Sur–Reply (D.E.49), and a Sur–Reply (D.E.50), on October 5, 2001. Defendant Gorman filed his Reply (D.E.52) on October 11, 2001. Having considered the Motions, the Memorandum in Opposition, the Replies and the record, the Court finds as follows.

### I. Factual Background

The following relevant facts are taken from Plaintiffs' Amended Complaint. This action arises out of the sales of securities to Plaintiffs by Defendants in connection with a private offering of eight million shares of common stock of eCampus.com in August, 1999. (¶ 14.) In April, 1999, Defendants Gorman and Thomas, with other investors, invested funds to form eCampus.com. (¶ 7.) eCampus.com's primary business was the sale, via its Internet web site, of textbooks and other supplies and

merchandise commonly found in college bookstores. (¶ 8.) Plaintiffs allege that, at the time of the private placement, Defendant Gorman owned in excess of 10% of the company's outstanding stock. (¶ 5.) Defendant Gorman became a Director of eCampus.com in October, 1999. (¶ 6.)

Plaintiffs allege that Defendants personally offered, solicited and sold shares of eCampus.com in a private offering of securities to Plaintiffs in August, 1999.[1] (¶¶ 5, 6.) The Subscription Agreement and Purchaser Questionnaire acknowledged that the securities had not been registered under the Securities Act of 1933 or any relevant state securities law. (¶ 14.) The private placement purported to be exempt from registration pursuant to Rule 506 of SEC Regulation D. (¶ 20.) The Form D filed with the SEC on August 25, 1999 stated that eCampus.com had raised $16,605,965.40 from 112 "accredited investors" in the private placement. (¶ 19.) Plaintiffs allege that several investors among the 112 initial investors were not accredited investors, and at least one Plaintiff-investor did not represent that she was an accredited investor. (¶ 19.) Plaintiffs claim that the presence of unaccredited investors triggered certain information and auditing requirements, with which the private placement did not comply, so that the stock offering did not qualify for exemption under Rule 506. (¶¶ 20–24.)

## II. Parties' Arguments

In the Amended Complaint, Plaintiffs seek rescission of their eCampus.com stock purchases and reimbursement of the amounts paid for the securities, plus interest. Count I alleges that the private stock offering violated section 12(a)(1) of the Securities Act of 1933, as a sale of unregistered securities which were not exempt from registration. Count II claims that the sales of unregistered securities violated Florida law. In Count III, Plaintiffs seek a declaratory judgment to the effect that the transactions failed to comply with the dealer and transaction registration requirements of Florida law.

Defendants have moved to dismiss all counts of the Amended Complaint. With regard to Count I, Defendants argue that: (1) Count I is the time barred under the Security Act's one-year statute of limitations; (2) Plaintiffs have failed to adequately allege agent liability; and (3) Plaintiffs have failed to meet the pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure. As to Counts II and III, Defendants contend: (1) the National Securities Marketing ·Improvement Act preempts the application of Florida law; (2) Plaintiffs have failed to adequately allege agent liability under Florida law; and (3) these claims are time barred for the same reason as Count I.

Plaintiffs argue that their claims are not time barred because they brought this action within one year of discovering the violations alleged. They also contend that they have alleged adequately agent liability, and that Rule 9(b)'s heightened pleading requirements for fraud actions are not applicable in this case. Plaintiffs also assert that their state law claims are neither preempted nor time barred.

## III. Standard for a Rule 12(b)(6) Motion to Dismiss

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move for dismissal of a claim that fails to state a

---

1. Specifically, Plaintiffs allege that Defendant Gorman personally offered, solicited or sold to Plaintiff Peter Boinis and "certain of the other Plaintiffs," and that Defendant Thomas personally offered, solicited or sold to all of the Plaintiffs other than Peter Boinis. (¶¶ 5, 6.)

claim upon which relief can be granted. The Eleventh Circuit clearly articulated the standard of review for a Rule 12(b)(6) motion to dismiss in *Harper v. Blockbuster Entertainment Corp.*, 139 F.3d 1385, 1387 (11th Cir.), *cert. denied*, 525 U.S. 1000, 119 S.Ct. 509, 142 L.Ed.2d 422 (1998).

> "The standard of review for a motion to dismiss is the same for the appellate court as it is for the trial court." *Stephens v. Dep't of Health and Human Servs.*, 901 F.2d 1571, 1573 (11th Cir. 1990). A motion to dismiss is only granted when the movant demonstrates "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

"On a motion to dismiss, the facts stated in appellant's complaint and all reasonable inferences therefrom are taken as true." *Stephens*, 901 F.2d at 1573.

### IV. Analysis

#### A. Section 12(a)(1) Claim is Time Barred

In Count I of the Amended Complaint, Plaintiffs allege that the sale of securities violated section 5 of the Securities Act, and they seek rescission of the transaction pursuant to section 12(a)(1). Section 13 sets forth the applicable statute of limitations:

> No action shall be maintained to enforce any liability created under section [11] or section [12(a)(2)] unless brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence, or, if the action is to enforce a liability created under section [12(a)(1)], unless brought within one year after the violation upon which it is based. In no event shall any such action be brought to enforce a liability created under section [11] or [12(a)(1)] more than three years after the security was bona fide

offered to the public, or under section [12(a)(2)] more than three years after the sale.

15 U.S.C. § 77m (Supp.2001).

The Amended Complaint alleges:

> The instant action is brought within three years of the date on which shares of eCampus.com were first bonafide offered to the public and within one year of discovery, with the exercise of reasonable diligence, of the violations of the Securities Act alleged herein. Moreover, Plaintiffs sought to rescind their purchases from Gonnan [and] Thomas [sic] in October 2000.

(Am.Compl.¶ 28.) Plaintiffs argue that their section 12(a)(1) claim is timely under the language of section 13, because they filed their Complaint within one year of discovery of Defendants' violations, so that equitable tolling should apply, or, alternatively, that Defendants are equitably estopped from asserting a statute of limitations defense by leading Plaintiffs to believe that their purchases would be rescinded.

■ Apparently, neither the Eleventh Circuit nor any other appellate court has ruled upon whether the one-year discovery rule applies to section 12(a)(1) claims. This Court agrees with numerous other district courts that have held that the discovery rule does not apply to section 12(a)(1) claims. *See, e.g., McCarthy v. Barnett Bank of Polk Co.*, 750 F.Supp. 1119, 1124 (M.D.Fla.1990); *Blatt v. Merrill Lynch*, 916 F.Supp. 1343, 1352 (D.N.J. 1996); *Snyder v. Newhard, Cook & Co.*, 764 F.Supp. 612, 618 (D.Colo.1991); *Farmers & Merchants Bank v. Hamilton Hotel Partners of Jacksonville Ltd. P'ship*, 702 F.Supp. 1417, 1423 (W.D.Ark.1988); *see also Mason v. Marshall*, 412 F.Supp. 294, 299–300 (N.D.Tex.1974), *aff'd*, 531 F.2d 1274 (5th Cir.1976) (holding—without mentioning discovery rule—that a 12(a)(1)

claim was barred where plaintiffs paid for securities more than one year before filing the cause of action).

First, section 13 clearly distinguishes between section 12(a)(1) and section 12(a)(2) claims. For section 12(a)(2) claims, the beginning of the limitation period is flexible, depending on the discovery of the misstatement. A 12(a)(1) claim, by contrast, is barred "unless brought within one year after the violation upon which it is based." 15 U.S.C. § 77m. Congress plainly intended to differentiate between these two situations, and this Court must give effect to the clear expression of Congressional intent.

■ Second, the discovery rule is unjustified in the section 12(a)(1) context because non-registration violations are easily uncovered. *See Blatt,* 916 F.Supp. at 1353; *Snyder,* 764 F.Supp. at 618–19. In this case, Plaintiffs have alleged that the August 1999 Subscription Agreement and Purchaser Questionnaire acknowledged that the securities purchased by Plaintiffs had not been registered under the Securities Act or any relevant state securities law. (Am.Compl.¶ 14.) Plaintiffs have also alleged that the Form D filed on August 25, 1999 reflected that all of the investors were "accredited investors," and that the August 1999 private placement purported to be exempt from registration pursuant to Rule 506 of SEC Regulation D. (*Id.* ¶¶ 19, 20.) Thus, the Amended Complaint demonstrates that all of the information necessary for this action was available to Plaintiffs as of August, 1999.

■ Similarly, Plaintiffs cannot claim that equitable tolling is justified on the basis of fraudulent concealment. From the face of the Amended Complaint, it is clear that Defendants never attempted to conceal the non-registration of the securities. Plaintiffs have alleged that public documents reflected that the shares had not been registered under federal or state law, and that a transactional exemption from the Securities Act was being claimed pursuant to Regulation D. (Am. Compl.¶¶ 14, 20.) Since the investors knew as of August, 1999 that the securities were not registered, they had until August, 2000 to bring a federal claim. Having failed in this regard, Plaintiffs' section 12(a)(1) claims are now time barred.

■ Finally, Defendants are not equitably estopped from asserting a statute of limitations defense. The Amended Complaint alleges that Plaintiffs sought to rescind their purchases in October, 2000, and that Defendants failed to rescind the transactions, despite leading Plaintiffs to believe that their purchases would be rescinded. (Am.Compl.¶ 28.) Based on the analysis set forth above, the statute of limitations would have expired as of August, 2000. Thus, Defendants' subsequent conduct is irrelevant, and Plaintiffs' allegations do not merit equitable estoppel. Accordingly, Count I must be dismissed as time barred.

## B. Federal Preemption of State Law Claims

Until 1996, both federal and state regulations governed securities offerings. The National Securities Market Improvement Act of 1996 ("NSMIA") eliminated the dual system of regulations for certain securities offerings, and prohibited states from requiring the registration of such securities.[2] 15 U.S.C. § 77r (1997 & Supp.2001). Sec-

---

**2.** A limited exception to federal preemption is that State securities commissions retain jurisdiction under state laws to investigate and bring enforcement actions with respect to fraud or deceit, or unlawful conduct by a broker or dealer, in connection with securities or securities transactions. *See* 15 U.S.C. § 77r(c). The applicability of this exception is not at issue in this case.

tion 18 of the NSMIA, entitled "[e]xemption from State regulation of securities offerings," provides:

"[N]o law, rule, regulation, or order or other administrative action of any State or any political local division thereof— requiring, or with respect to, registration or qualification of securities, or registration or qualification of securities transactions, shall directly or indirectly apply to a security that ... is a covered security; or ... shall directly or indirectly prohibit, limit, or impose conditions, based on the merits of such offering or issuer, upon the offer or sale of any [covered security]."

15 U.S.C. § 77r(a) (1997 & Supp.2001).

Plaintiffs claim that Defendants' sale of unregistered securities violated Florida's securities registration requirements. Thus, the Court must consider whether Florida law is preempted by NSMIA. As amended in 1997, Florida law provides, "It is unlawful and a violation of this chapter for any person to sell or offer to sell a security within this state unless the security is exempt under § 517.051, is sold in a transaction under § 517.061, is a federal covered security, or is registered pursuant to this chapter." FLA.STAT. § 517.07 (Supp.2001).

The primary issue for the Court's consideration is whether the securities sold to Plaintiffs were federally "covered securities." As relevant to this case, a security is "covered" if it is sold in a transaction that is exempt from registration pursuant to SEC rules or regulations issued under 15 U.S.C. § 77d(2). *See* 15 U.S.C. § 77r(b)(4)(D). Plaintiffs assert that the securities at issue are not "covered" because they were not actually exempt pursuant to Regulation D, since the private placement did not meet the requirements of Rule 506. Thus, Plaintiffs contend that they should be able to pursue their non-registration claims under Florida law.

Defendants argue that the securities are "covered securities" under Rule 506, and, therefore, NSMIA preempts Plaintiffs' Florida statutory-based claims.

■ "The purpose of Congress is the ultimate touchstone in every preemption case." *Fla. E. Coast Railway Co. v. City of W. Palm Beach,* 266 F.3d 1324, 1329 (11th Cir.2001) (quoting *Medtronic, Inc. v. Lohr,* 518 U.S. 470, 485, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996)). When passing NSMIA, Congress stated its purpose, "to further and advance the development of national securities markets and eliminate the costs and burdens of duplicative and unnecessary regulation by, as a general rule, designating the Federal government as the exclusive regulator of national offerings of securities." H.R.REP. No. 104–622, at 16 (1996), reprinted in 1996 U.S.S.C.A.N. 3877, 3878.

With regard to the relevant portion of the definition of "covered security," Congress explained:

"[S]ecurities sold in private transactions under section 4(2) of the Securities Act would be 'covered securities,' and thus preempted, if offered or sold pursuant to a Commission rule or regulation adopted under such section 4(2). The Committee intends that the section 4(2) exemption from State regulation facilitate private placement of securities consistent with the public interest and the protection of investors."

*Id.* at 32, *reprinted* in 1996 U.S.S.C.A.N. at 3894–95.

■ Here, Plaintiffs have alleged that Defendants' private placement of securities "purported to be exempt from registration pursuant to Rule 506 of Regulation D promulgated by the SEC." (Am.Compl. ¶ 20.) Construing this allegation in Plaintiffs' favor, the Court finds that the securities in this case were "offered or sold pursuant to

a Commission rule or regulation adopted under section 4(2)." Regardless of whether the private placement actually complied with the substantive requirements of Regulation D or Rule 506, the securities sold to Plaintiffs are federal "covered securities" because they were sold pursuant to those rules. As a result, FLA.STAT. § 517.07 does not require registration of such securities.

Furthermore, any attempt by Florida to require registration of such securities or securities transaction would be preempted by NSMIA. Congress expressed its intent in NSMIA that federal regulations alone should govern the registration of national securities offerings. Where a Form D was filed with the SEC for a transaction that purported to merit an exemption from federal registration pursuant to Regulation D, Florida law could not require duplicative registration or a transactional exemption from registration. *See* 15 U.S.C. § 77r. Accordingly, it is

**ORDERED AND ADJUDGED that:**

1. The Motion to Dismiss Amended Complaint (D.E.30), filed July 23, 2001, by Defendant David Thomas, is **GRANTED.**

2. The Motion to Dismiss (D.E.35), filed July 31, 2001, by Defendant Lawrence D. Gorman, is **GRANTED.**

3. The Motion for Leave to file a Sur–Reply (D.E.49), filed on October 5, 2001, is **DENIED.**

4. This case is **CLOSED.**

5. All motions not otherwise ruled upon by separate order are **DENIED AS MOOT.**