Daniel B. HAMBY, Jr., Plaintiff

v.

CLEARWATER CONSULTING CONCEPTS, LLLP; CCC Holdings, LLC; Lance Talkington; and Theodore C. Skokos, Jr., Defendants/Third–Party Plaintiffs

v.

Russell W. McAdams, Third–Party Defendant.

No. 4:04CV02254 JLH.

United States District Court, E.D. Arkansas, Western Division.

April 25, 2006.

Gary D. Corum, Nate Coulter, Wilson, Engstrom, Corum & Coulter, Little Rock, AR, for Plaintiff.

Courtney McLarty, George Randy Coleman, Jr., Randy Coleman, P.A., Little Rock, AR, for Defendants/Third–Party Plaintiffs.

Daniel D. Becker, Attorney at Law, Hot Springs, AR, for Third–Party Defendant.

## OPINION AND ORDER

HOLMES, District Judge.

This case is before the Court on cross motions for partial summary judgment. For the reasons stated hereafter, both cross motions are denied in their entirety.

### I.

Clearwater Consulting Concepts, LLLP, is a limited liability partnership organized under the laws of the United States Virgin Islands. CCC Holdings, LLC, is the general partner of Clearwater Consulting Concepts. Both entities have their principal place of business in the U.S. Virgin Islands. Clearwater Consulting Concepts was formed to establish and conduct business activities that qualify as a "designated service business" in the Virgin Islands pursuant to the Virgin Islands Economic Development Program. The purpose of the program is to promote economic development and employment of local residents in the Virgin Islands. Businesses that qualify for participation in the program receive special tax considerations under the Virgin Islands' tax code and the Internal Revenue Code. See 26 U.S.C. § 934.

Clearwater was formed in the summer of 2002. Theodore C. Skokos, Jr., is the manager of CCC Holdings and the chief executive officer of Clearwater Consulting Concepts. Lance Talkington was an original investor in the entities and became the

chief financial officer of Clearwater Consulting Concepts on September 24, 2003.

Hamby owns and operates a business in Hot Springs, Arkansas. In July 2003, he entered into an Investment Agreement with Clearwater Consulting Concepts and CCC Holdings. He paid $140,000 at that time and an additional $116,000 at a later time. The purpose of this investment was to obtain tax benefits. A brochure advertising Clearwater Consulting Concepts states:

> By associating your business activities in the Virgin Islands with Clearwater Consulting Concepts, LLLP, you will be eligible for unbelievable tax benefits and receive a substantial reduction in or exemption from your business and personal taxes. Specifically, you may be eligible for the following:
> * 90% reduction in federal income taxes
> * 100% exemption on property taxes
> * 100% exemption on excise taxes[.]

Despite the explicit disclaimer that the purported tax benefits were "unbelievable," Hamby apparently did believe that the tax benefits were obtainable through Clearwater Consulting Concepts, and he paid the defendants $256,000 to obtain them.

The payment of the $256,000 was made pursuant to a Investment Agreement by and among Clearwater Consulting Concepts, CCC Holdings, and Hamby. In addition to the Investment Agreement, the parties entered into a Partnership Agreement the purpose of which was to define the respective rights and obligations of CCC Holdings as the general partner of Clearwater Consulting Concepts and the limited partners. Hamby paid $1,000 in to an account that he controlled ostensibly as an initial capital contribution in Clearwater Consulting Concepts. He received a Certificate of Interest in return for his investment, although the parties disagree as to whether the Certificate of Interest was purchased by the $256,000 paid pursuant to the Investment Agreement or the $1,000 ostensibly paid as an initial capital contribution. Hamby also deposited $2,000,000 in a Clearwater Consulting Concepts account over which he retained control.

Hamby contends that the promised tax benefits were never realized. He filed this action seeking to recover the funds that he had paid under the Investment Agreement. His first cause of action is for breach of contract. His second cause of action is for unjust enrichment. His third cause of action is for sale of an unregistered/nonexempt security in violation of the Arkansas Securities Act.

Hamby has moved for partial summary judgment in which he seeks summary judgment as to the third cause of action in his complaint. The defendants have filed a cross motion for partial summary judgment in which they seek summary judgment with respect to the third cause of action in Hamby's complaint. The third cause of action alleges that the defendants sold an unregistered security to Hamby in violation of Ark.Code Ann. § 23–42–501(1) and (2). Pursuant to Ark.Code Ann. § 23–42–106(a)(1), Hamby seeks rescission and the return of his investment, plus interest on that amount at the rate of 6% per annum. He also seeks to hold Lance Talkington and Theodore C. Skokos, Jr., jointly and severally liable with Clearwater Consulting Concepts, LLLP, and CCC Holdings, LLC, on the ground that Talkington and Skokos are controlling persons and therefore jointly and severally liable pursuant to Ark.Code Ann. § 23–42–106(c).

Although the defendants answered by denying all of the allegations in the third cause of action, they have now admitted that one or more of the defendants sold a security to Hamby and that the security was not registered with the State of Arkansas pursuant to the Arkansas Securi-

ties Act, Ark.Code Ann. § 23–42–101 et. seq.

Defendants oppose Hamby's motion for partial summary judgment and have filed a cross motion for partial summary judgment. Defendants contend that, as a matter of law, the security did not need to be registered in Arkansas, nor did they need to obtain an exemption. They also move for summary judgment as to the claim against Talkington in the third cause of action because Talkington was not an officer of Clearwater Consulting Concepts at the time of the transaction with Hamby.

## II.

A court should enter summary judgment if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); *Cheshewalla v. Rand & Son Constr. Co.,* 415 F.3d 847, 850 (8th Cir.2005). A genuine issue of material fact exists only if there is sufficient evidence to allow a jury to return a verdict for the nonmoving party. *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2511.

## III.

Ark.Code Ann. § 23–42–501 provides:

It is unlawful for any person to offer or sell any security in this state unless:

    (1) It is registered under this chapter;

    (2) The security or transaction is exempted under § 23–42–503 or § 23–42–504; or

    (3) It is a covered security.

It is undisputed that the security sold by the defendants to Hamby was neither registered nor exempted under § 23–42–503 or § 23–42–504. Defendants contend that the security was a "covered security."

The Arkansas Securities Act defines "covered security" as "any security described as a covered security in section 18(b) of the Securities Act of 1933[.]" Ark.Code Ann. § 23–42–102(4).

The defendants contend that the security at issue was a "covered security" pursuant to § 18(b)(4)(D) of the Securities Act of 1933, codified at 15 U.S.C. § 77r(b)(4)(D), and Rule 506 of Regulation D. Section 18(b)(4)(D) provides that a security is a covered security with respect to a transaction that is exempt from registration pursuant to commission rules or regulations issued under § 4(2) of the Securities Act of 1933. 15 U.S.C. § 77r(b)(4)(D). Section 4(2) states that the provisions of § 5 of the Securities Act of 1933, codified at 15 U.S.C. § 77e, shall not apply to transactions by an issuer not involving any public offering. *Id.* § 77d(2). Rule 506 of Regulation D provides:

(a) Exemption. Offers and sales of securities by an issuer that satisfy the conditions in paragraph (b) of this section shall be deemed to be transactions not involving any public offering within the meaning of section 4(2) [15 U.S.C. § 77d(2) ] of the Act.

(b) Conditions to be met—

    (1) General conditions. To qualify for an exemption under this section, offers and sales must satisfy all the terms and conditions of §§ 230.501 and 230.502.

    (2) Special conditions—

    (i) Limitation on number of purchasers. There are no more than or the issuer reasonably believes that there are no more than 35 purchasers of securities from the issuer in any offering under this section.

\*    \*    \*    \*    \*    \*

    (ii) Nature of purchasers. Each purchaser who is not an accredited investor either alone or with his purchaser repre-

sentative(s) has such knowledge and experience in financial and business matters that he is capable of evaluating the merits and risks of the prospective investment, or the issuer reasonably believes immediately prior to making any sale that such purchaser comes within this description.

17 C.F.R. § 230.506.

Rule 503(a) of Regulation D provides, "An issuer offering or selling securities in reliance on ... § 230.506 shall file with the Commission five copies of a notice on Form D (17 C.F.R. 239.500) no later than 15 days after the first sale of securities." *Id.* § 230.503(a). It is undisputed that no Form D was ever filed with the Securities and Exchange Commission, nor was a Form D filed with the Arkansas Securities Department pursuant to Ark.Code Ann. § 23–42–509(c)(1) and Rule 509 of the Arkansas Securities Commissioner Rules. Defendants contend that the security at issue was a "covered security" even though no Form D was ever filed. They cite *Temple v. Gorman,* 201 F.Supp.2d 1238 (S.D.Fla.2002), for the proposition that the exemption for state requirements under Rule 506 is mandated by the federal preemption "whether the offer actually complied with the requirements of Rule 506 or not; the requirement is that they be 'offered or sold' pursuant to Rule 506.... Securities are federal 'covered securities' regardless of actual compliance with Regulation D or Rule 506." The defendants point to a recitation in the Partnership Agreement that states as follows:

The Partnership Interests represented by this Agreement of Limited Liability Limited Partnership have been issued pursuant to an exemption from registration under the United States Securities Act of 1933, the Securities Laws of the Territory of the United States Virgin Islands and any other applicable state laws. The exemption depends, in part, upon the representation by the holder

that the security has been acquired for investment purposes. The security may not be sold, transferred or otherwise disposed of by the holder, unless registered under relevant federal, state or territory securities laws or pursuant to an applicable exemption from registration, if an opinion of counsel satisfactory to counsel for the Clearwater Consulting Concepts, Limited Liability Limited Partnership is first presented to the Clearwater Consulting Concepts, Limited Liability Limited Partnership, that states that the transfer will not violate federal, state or territory securities laws. Any transfer contrary to this restriction is void.

The defendants also point to provisions in the Partnership Agreement in which the partner represents that he is a "accredited investor" under Rule 501 of Regulation D of the Securities Act of 1933 and other similar provisions that appear to track the requirements of Rule 506 of Regulation D.

Hamby, on the other hand, contends that because the defendants did not file Form D with the Securities & Exchange Commission, the security is not a "covered security" and therefore the sale of that security in the State of Arkansas violated Ark.Code Ann. § 23–42–501.

Because it is undisputed that no Form D was ever filed, the initial issue is purely a question of law, i.e., whether the filing of a Form D is a condition for the exemption created by § 4(2) of the Securities Act and Rule 506 of Regulation D.

As noted above, Rule 503 of Regulation D requires an issuer offering or selling securities in reliance on Rule 506 to file with the S.E.C. a notice on Form D no later than 15 days after the first sale of securities. 17 C.F.R. § 230.503(a). Rule 506(b) provides, "To qualify for an exemption under this section, offers and sales must satisfy all the terms and conditions of

§§ 230.501 and 230.502." *Id.* § 230.506(b)(1).

When Regulation D was originally promulgated in 1982, Rules 504, 505, and 506 required compliance with Rules 501–503 to qualify for the exemptions. Regulation D, 47 Fed.Reg. 11251, 11267 (Mar. 16, 1982). The S.E.C. amended Regulation D in 1989 to remove the requirement of compliance with Rule 503 as a condition for obtaining the exemptions in Rules 504–506. Regulation D, 54 Fed.Reg. 11369, 11373 (Mar. 20, 1989). The S.E.C.'s summary of the rule change states, "While the filing of Form D has been retained, it will no longer be a condition to any exemption under Regulation D. New Rule 507 will disqualify any issuer found to have violated the Form D filing requirement from future use of Regulation D." Regulation D, S.E.C. Release No. 6,825, 43 SEC Docket 704 (Mar. 14, 1989). Failure to file a Form D may result in disqualification from future use of the exemptions in Rules 504–506; and it could constitute a felony under 15 U.S.C. § 77x if the failure was willful; but the S.E.C. has explicitly stated that filing a Form D is not a condition to obtaining an exemption under Rules 504–506.[1]

Because filing a Form D is not a condition to obtaining an exception under Rule 506, and because Ark.Code Ann. § 23–42–102(4) incorporates federal law by reference, Hamby has not shown that he is entitled to judgment as a matter of law on his third cause of action. Hamby's motion for partial summary judgment is therefore denied.

**IV.**

The defendants have filed a cross motion for summary judgment in which they argue that, under the authority of *Temple,* the sale of the security to Hamby was a covered security because it was offered as such, regardless of whether the defendants actually complied with Rule 506 of Regulation D or not. Alternatively, the defendants argue that, as a matter of law, the sale of the security to Hamby was a covered security pursuant to the exemption of Rule 506 of Regulation D. They also argue that the consideration for the security was $1,000, not $256,000, and that Hamby's income tax return shows that he earned income exceeding that amount through Clearwater Consulting Concepts, so he is not entitled to a refund under Ark.Code Ann. § 23–42–106(a)(1).

█ The defendants argue that the mere statement in the Partnership Agreement that the sale was made pursuant to an exemption from federal registration, without any showing of actual compliance with that exemption, is enough to exempt the sale from Arkansas securities law. In essence, the defendants argue that Congress intended to preempt state laws wherever an offer or sale could possibly involve a covered security. Congress has not completely preempted the field of securities regulation, however. *Dudek v. Prudential Sec., Inc.,* 295 F.3d 875, 878 (8th Cir.2002). The statute that sets forth the scope of federal preemption of state securities laws is limited; it only applies to state laws or regulations that directly or

---

1. One commentator notes, "[A]s the exemption rules are written, one can get the benefit of the Regulation D exemptions without filing the form D." Larry D. Soderquist, *Securities Act Registration Exemptions,* 1490 PLI/Corp 265, 289 (2005). But he adds, "Since a willful violation of Rule 503 is a felony under Securities Act section 24, it is unlikely that the Commission or a court would allow some-

one who knows the form is to be filed, and purposely fails to file it, to have the benefit of a Regulation D exemption." *Id.* n. 66. No evidence has been offered here as to whether the failure to file Form D in this case was willful, so the Court does not reach the issue of whether a willful failure to file Form D would disqualify the security at issue from the exemption.

indirectly apply to a "covered security" or a security that "will be a covered security upon the completion of the transaction." 15 U.S.C. § 77r(a)(1). Thus, the only way to assert federal preemption is to first show that an exemption from federal registration actually applies.[2]

■ The defendants have the burden of proving an exemption from the registration requirements. *See Parker v. Broom,* 820 F.2d 966, 968 (8th Cir.1987). Hamby correctly points out that defendants have offered no affidavits or deposition testimony that the other investors were accredited investors under Regulation D. Other than the recitations in the Partnership Agreement tracking the requirements of Regulation D, the defendants have offered no evidence that their sales of the security at issue met the requirements for an exemption under Rule 506. The defendants have not shown that the sales were exempt as a matter of law. *Cf.* Fed.R.Civ.P. 56(c), (e).

■ That brings us to the third issue, which is the amount of the consideration paid for the security. Hamby contends that he paid $256,000 for the security pursuant to the Investment Agreement. Defendants contend that the $256,000 paid pursuant to the Investment Agreement was for fees to CCC Holdings, not for the purchase of the interest in Clearwater Consulting Concepts, and that Hamby actually paid $1,000 as an initial capital contribution under the Partnership Agreement. Hamby argues that the $1,000 was not a capital contribution because it was paid into an account he controlled.

This is not an issue that can be decided as a matter of law because the Investment Agreement and the Partnership Agreement are ambiguous. The Investment Agreement provides:

> **WHEREAS,** the Limited Partner [Hamby] desires to acquire an interest as a limited partner in Clearwater Consulting Concepts, LLLP ...; and

> **WHEREAS,** the Partnership and the General Partner desire to admit the Limited Partner to the Partnership as a limited partner.

> **NOW, THEREFORE,** in consideration of the mutual promises herein contained, and other good and valuable consideration ... the parties hereto covenant and agree as follows....

Those introductory clauses are followed by a calculation of the "amount of fee" that would be paid by the limited partner to the general partner, CCC Holdings, each year. Although the Investment Agreement characterizes that payment as a fee to CCC Holdings, the language quoted above suggests that the payment of fees—in this case $256,000—was part of the acquisition of an interest as a limited partner. Indeed, the document is entitled "Investment

---

**2.** To the extent that *Temple* can be read to support the principle of broad preemption that the defendants urge, this Court declines to follow that case. It is unsurprising that another court has noted the "absence of any citation to caselaw or other supporting authority" to support the principle of broad preemption found in *Temple. Buist v. Time Domain Corp.,* 926 So.2d 290, 297 (Ala.2005). This Court has found no authority for that principle, either. Contrary to *Temple,* most commentators have stated the obvious: a security has to actually be a "covered security" before federal preemption applies. *See, e.g.,* Hugh H. Makens, *Blue Sky Practice—Part I:*
*Doing it Right,* SL075 ALI–ABA 549, 554 (Mar. 16, 2006) ("It is essential to bear in mind that Rule 506 preemption from full state regulation is lost if the private placement does not, in fact, comply with the specific requirements of the rule."); Peter M. Rosenblum, *Private Investment Funds,* SL062 ALI–ABA 113, 129 (Jan. 27, 2006) ("In particular, if securities in the fund are offered in a transaction ... that does not otherwise result in the securities being deemed to be 'covered securities,'... the securities will be subject to such securities and blue sky laws, absent an exemption in each relevant state.").

Agreement," not "fee payment agreement." Clearwater Consulting Concepts is a party to the Investment Agreement, which it need not be if the Investment Agreement had to do only with fees paid by Hamby to CCC Holdings. That the document is entitled "Investment Agreement," that Clearwater Consulting Concepts is a party to the document, and that the introductory paragraphs suggest that the document is part of the agreement whereby Hamby would acquire an interest as a limited partner in Clearwater Consulting Concepts, all tend to show that the $256,000 was the purchase price for the investment in Clearwater Consulting Concepts.

On the other hand, the Investment Agreement also characterizes those funds as a fee paid to the general partner, CCC Holdings; and the Partnership Agreement provides for an initial capital contribution by a partner "as set forth in Schedule A." Schedule A is not included as an exhibit to the cross motion for partial summary judgment, but apparently Schedule A provided for an initial capital contribution of either $100 or $1,000. The defendants argue that the initial capital contribution under the Partnership Agreement was the purchase price for the security at issue, which was an interest in the limited partnership. Hamby argues that he was required to pay the $256,000 under the Investment Agreement in order to purchase the security at issue. The two contractual documents (the Partnership Agreement and the Investment Agreement) are ambiguous. Therefore, summary judgment will be denied as to the amount, if any, owed pursuant to Ark.Code Ann. § 23–42–106(a)(1)(A).

The defendants also assert that, even if the $256,000 represents Hamby's capital contribution, Hamby is not entitled to its return because Ark.Code Ann. § 23–42–106(a)(1) limits recovery to any amount of the capital contribution in excess of income received on the security, and a document filed with Hamby's 2003 tax return shows $1,860,000 in income from Clearwater. A factual issue exists, however, as to whether the $1,860,000 actually was income from Clearwater. Hamby deposited $2,000,000 in an account with Clearwater over which he retained control. If the $1,860,000 came from that account, it would not be "income received on the security." Summary judgment will therefore be denied on this issue as well.

## V.

The final issue is whether Lance Talkington was a controlling person under Ark. Code Ann. § 23–42–106(c) at the time of the transaction. Hamby paid $140,000 on July 30, 2003. He paid an additional $116,000 in January 2004. Talkington has submitted an affidavit that states, in pertinent part, "I became CFO of Clearwater on September 24, 2003, and that was the first time that I filled an officer role in Clearwater. From a rights perspective, up until that point, my influence in Clearwater was similar to that of any other limited partner/investor." On the other hand, plaintiffs point out that Talkington appeared to exercise significant influence on Clearwater Consulting Concepts even before he became an officer. Talkington's affidavit tacitly concedes that he exercised influence over Clearwater Consulting Concepts. The statement that his influence was limited before September 24, 2003, is qualified by the phrase *from a rights perspective.* Before September 24, 2003, "from a rights perspective," his influence was that of a limited partner; but that statement is not inconsistent with the proposition that Talkington in fact exercised considerable control over Clearwater Consulting Concepts even before he acquired a formal title corresponding to that control.

Ark.Code Ann. § 23–42–106(c) provides:

Every person who controls a seller liable under subsection (a) of this section or a purchaser liable under subsection (b) of this section; every partner, officer, or director of such a seller or purchaser; every person occupying a similar status or performing a similar function; every employee of such a seller or purchaser who materially aids in the sale; and every broker-dealer or agent who materially aids in the sale are also liable jointly and severally with, and to the same extent as, the seller or purchaser. . . .

Although Talkington was not an officer at the time of Hamby's initial payment of $140,000, he was an officer at the time of Hamby's subsequent payment of $116,000. There is also evidence that he materially aided in the sale of the security and that he exercised considerable control over the entity. A jury could find that, for all practical purposes, he and Skokos ran the entity together from the outset. Therefore, there is a genuine issue of material fact as to whether Talkington is liable under § 23–42–106(c). His motion for partial summary judgment as to the third cause of action is denied.

### CONCLUSION

Plaintiff's motion for partial summary judgment is denied. Document # 50. Defendants' cross motion for partial summary judgment is denied. Document # 62.