Charles RISDALL, et al., Appellants,

v.

BROWN–WILBERT, INC.,
et al., Defendants,

Christopher C. Brown, et
al., Respondents.

No. A06–1233.

Supreme Court of Minnesota.

July 31, 2008.

Peter A. Koller, Moss & Barnett, Scott D. Hillstrom, Guardian Law Group, LLC, Minneapolis, David J. Morrissey, Gonzaga University Law School, Spokane, WA, for Appellant.

Kay N. Hunt, Lommen Abdo, George E. Antrim, III, Minneapolis, for Respondents.

Michele M. Owen, Christopher Michael Kaisershot, Asst. Atty. General, St. Paul, for Amicus Curiae.

## OPINION

ANDERSON, G. BARRY, Justice.

Appellants Charles Risdall, Len Dozier, and John Risdall (as personal representative of the estate of Mary Risdall) sued defendant Brown–Wilbert, Inc., and respondents Christopher C. Brown and funeral.com, Inc., seeking damages and rescission of purchases of funeral.com stock. The district court granted appellants' motion for summary judgment. The court of appeals reversed, holding that appellants' state law claims were preempted by federal law. *Risdall v. Brown–Wilbert, Inc.,* 733 N.W.2d 827, 832, 834 (Minn.App.2007). We reverse the decision of the court of appeals and remand for further proceedings.

Respondent funeral.com was incorporated in the fall of 1999 for the purpose of developing a comprehensive funeral website. The company's chief executive officer, respondent Christopher Brown, also served as president of defendant Brown–Wilbert, Inc., a family-owned, closely-held company that manufactures and sells concrete burial vaults and cremation products. On March 2, 2000, funeral.com issued a private placement memorandum (PPM1) for the sale of funeral.com stock. In March and April of 2000, Charles Risdall, Len Dozier, and Mary Risdall purchased shares of funeral.com stock in the amounts of $70,000, $100,000, and $50,000, respectively. PPM1 disclosed that the shares were not registered and were offered pursuant to the registration exemption for sales of stock to "accredited investors" as defined in Regulation D, 17 C.F.R. §§ 230.501–.508 (2007), a regulation promulgated by the Securities and Exchange Commission (SEC) under the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §§ 77a–77aa (2000). Charles Risdall, Len Dozier, and Mary Risdall acknowledged in their subscription agreements that they had been advised that the shares had not been registered and were offered pursuant to exemptions from registration. The parties agree that the stock was offered under

the registration exemption found in Rule 506 of Regulation D, 17 C.F.R. § 230.506.

On May 17, 2000, funeral.com issued a second private placement memorandum (PPM2) for the sale of funeral.com stock. Information concerning PPM2 was posted on the Internet, circulated via e-mail, and mailed to potential investors, despite the fact that offers and sales are disqualified from the Rule 506 registration exemption if the issuer or a person acting on its behalf "offer[s] or sell[s] the securities by any form of general solicitation or general advertising," 17 C.F.R. 230.502(c); *see* 17 C.F.R. 230.506(b)(1) (providing that offers and sales must satisfy all the terms and conditions of 230.501 and 230.502 to qualify for the Rule 506 registration exemption). In an affidavit filed with the district court, Christopher Brown stated that no sales were made under PPM2. Funeral.com issued a third private placement memorandum on July 20, 2000, and, according to Brown, funeral.com subsequently "quit trying to raise money."

In a letter dated August 3, 2000, the SEC notified funeral.com that it had learned that the company or affiliated persons were "offering securities to potential investors without registering the offers under the federal securities laws" and that the SEC was "not aware of any exemption applicable to [these] offerings." The SEC directed funeral.com either to cease sending e-mails regarding the offering and remove the offering from the Internet or to provide the SEC a written response demonstrating the company's compliance with the Securities Act. Counsel for funeral.com informed the SEC that although information regarding a private placement offering had been circulated via e-mail and posted on the Internet, the company had removed the information from the Internet and no one who had contacted the company in connection with the online postings

had actually purchased shares of funeral.com stock. According to funeral.com's counsel, the company would not accept subscriptions from investors who had requested a copy of the private placement memorandum through the online postings and would "make every effort to ensure that its offering efforts remain limited and focused and that investors are not sought or identified through any form of general solicitation."

Appellants Charles Risdall, Len Dozier, and John Risdall (as personal representative of the estate of Mary Risdall) brought an action against defendant Brown–Wilbert and respondents Christopher Brown and funeral.com in Ramsey County District Court in 2003, alleging consumer fraud, negligence, common law fraud, securities fraud, and unjust enrichment, and seeking rescission of the stock purchases. Appellants and respondents moved for summary judgment. Appellants argued, in part, that they were entitled to rescind the stock purchases under Minn.Stat. § 80A.23, subd. 1 (2006), because respondents sold unregistered securities in violation of Minn.Stat. § 80A.08 (2006). According to appellants, the stock offering did not qualify for the Minn.Stat. § 80A.15, subd. 2(h) (2006), exemption from registration because respondents violated a condition of the exemption by engaging in general solicitation and advertising.

The district court granted appellants' motion for summary judgment against respondents Christopher Brown and funeral.com and ordered that appellants be repaid the amounts of the stock purchases plus interest and attorney fees. The court concluded that (1) federal law did not preempt appellants' claim, (2) the sales under PPM1 and the offers under PPM2 were integrated into a single offering, and (3) respondents' solicitations in connection

with PPM2 disqualified the sales under PPM1 from any registration exemption. The court denied appellants' motion for summary judgment against defendant Brown–Wilbert and respondents' motion for summary judgment. At appellants' request, the court subsequently dismissed with prejudice all of appellants' remaining claims against respondents and defendant Brown–Wilbert. The court entered final judgment in appellants' favor on May 31, 2006, and respondents appealed.

The court of appeals reversed the district court's grant of summary judgment to appellants. *Risdall,* 733 N.W.2d at 832, 834. Noting that funeral.com intended for PPM1 to be exempt from registration under Regulation D, the court concluded "that an offering purporting to be exempt under Regulation D is governed exclusively by federal law, and any claim under state law relating to the offering is therefore preempted." *Id.* at 832. In dicta, the court explained that even if it were to "conclude that an offering must actually comply with Regulation D for federal law to preempt state-law claims relating to the offering," it "would nonetheless reverse the district court's grant of summary judgment * * * because * * * funeral.com complied with Regulation D in its sale of securities to [appellants]." *Id.* at 832–33. According to the court, PPM1 and PPM2 were not integrated into a single offering because it was undisputed that "no sales were made under PPM2" and "an offering under which no sales are made cannot be integrated with another offering under Regulation D." *Id.* at 833. Finally, the court also stated in dicta that even if appellants' claims were not preempted by

federal law, the sales of securities were exempt from Minnesota's registration requirement under Minn.Stat. § 80A.15, subd. 2(h). *Id.* at 834. We granted appellants' petition for review.

Appellants argue that they are entitled to rescission of their purchases of funeral.com stock under Minn.Stat. § 80A.23, subd. 1, which states that "[a]ny person who sells a security in violation of section[ ] 80A.08 * * * is liable to the person purchasing the security, who may sue either in equity for rescission upon tender of the security or at law for damages if that person no longer owns the security."[1] Minnesota Statutes § 80A.08 prohibited the offer or sale of unregistered securities in Minnesota unless "the security or transaction is exempted under section 80A.15 or * * * it is a federal covered security." The outcome of this case turns on our resolution of the following two issues: (1) whether federal law preempts state registration requirements with respect to securities that purport to be, but are not in fact, federal covered securities; and (2) whether a securities offer must result in a sale in order to be integrated under Minn. Stat. § 80A.15, subd. 2(h)(10), and Rule 502 of Regulation D, 17 C.F.R. § 230.502.

## I.

The threshold issue in this case is whether federal law preempts state registration requirements with respect to securities that purport to be, but are not in fact, federal covered securities, because if we resolve that issue affirmatively, then appellants' claims are preempted and we must affirm the decision of the court of

---

1. Effective August 1, 2007, Minnesota Statutes §§ 80A.01–.31 (2006) were repealed and replaced by the Uniform Securities Act (2002) (codified at Minn.Stat. §§ 80A.40–.90 (2006)). Act of May 11, 2006, ch. 196, art. 1, §§ 1, 51–52, 2006 Minn. Laws 34, 35, 91. But because

"[t]he predecessor act exclusively governs all actions or proceedings that are pending on [August 1, 2007,] or may be instituted on the basis of conduct occurring before August 1, 2007," Minn.Stat. § 80A.90(a), this case is governed by Minn.Stat. §§ 80A.01–.31.

appeals. In determining whether a state statute is preempted by federal law, the "sole task is to ascertain the intent of Congress." *Cal. Fed. Sav. & Loan Ass'n v. Guerra,* 479 U.S. 272, 280, 107 S.Ct. 683, 93 L.Ed.2d 613 (1987). "The clearest indication of such Congressional intent is express language; if Congress expressly preempts state action, the matter is settled." *Dahl v. Charles Schwab & Co.,* 545 N.W.2d 918, 922 (Minn.1996).

### A.

The Supremacy Clause of the United States Constitution provides that the "Constitution, and the Laws of the United States * * * made in Pursuance thereof * * *, shall be the supreme Law of the Land." U.S. Const. art. VI, cl. 2. The Securities Act of 1933, 15 U.S.C. §§ 77a–77aa, regulates the registration and distribution of securities. The National Securities Markets Improvement Act of 1996 (NSMIA), Pub.L. No. 104–290, § 102, 110 Stat. 3416, 3417–20 (1996), amended the Securities Act to provide for partial preemption of state registration requirements.[2] *See* 15 U.S.C. § 77r. As amended, section 77r(a) reads, in part, as follows:

> Except as otherwise provided in this section, no law, rule, regulation, or order, or other administrative action of any State or any political subdivision thereof—
>
> (1) requiring, or with respect to, registration or qualification of securities, or registration or qualification of securities transactions, shall directly or indirectly apply to a security that—
>
> (A) is a covered security; or
>
> (B) will be a covered security upon completion of the transaction * * *.

15 U.S.C. § 77r(a). Therefore, federal law preempts any state registration requirement with respect to "a covered security," *id.,* and Minnesota law recognized the preemptive effect of section 77r(a) by exempting "federal covered securit[ies]" from the state's securities registration requirement, Minn.Stat. § 80A.08.[3]

The Securities Act states that "[a] security is a covered security with respect to a transaction that is exempt from registration under this subchapter pursuant to * * * Commission rules or regulations issued under section 77d(2) of this title." 15 U.S.C. § 77r(b)(4)(D). Because section 77d(2), in turn, exempts from registration "transactions by an issuer not involving any public offering," 15 U.S.C. § 77d(2), a security that does not involve a public offering is a "covered security." Thus, all state registration requirements with respect to a security that does not involve a public offering are preempted by federal law, and federal law exempts such a security from registration. Under this framework, a security that does not involve a public offering is not subject to either federal or state registration requirements.

Under the private offering exemption found in Rule 506 of Regulation D, "[o]ffers and sales of securities by an issuer

---

**2.** The United States Court of Appeals for the Second Circuit described the purpose of NSMIA as follows:

> The primary purpose of NSMIA was to preempt state "Blue Sky" laws which required issuers to register many securities with state authorities prior to marketing in the state. By 1996, Congress recognized the redundancy and inefficiencies inherent in such a system and passed NSMIA to

preclude states from requiring issuers to register or qualify certain securities with state authorities.

*Lander v. Hartford Life & Annuity Ins. Co.,* 251 F.3d 101, 108 (2d Cir.2001).

**3.** The exemption for "federal covered securit[ies]" under the Uniform Securities Act is found at Minn.Stat. § 80A.49.

that satisfy [certain requirements] shall be deemed to be transactions not involving any public offering within the meaning of [15 U.S.C. § 77d(2) ]." 17 C.F.R. § 230.506(a). Rule 506 requires that "offers and sales must satisfy all the terms and conditions of §§ 230.501 and 230.502," 17 C.F.R. § 230.506(b)(1), and one of the conditions of section 230.502 is that "neither the issuer nor any person acting on its behalf shall offer or sell the securities by any form of general solicitation or general advertising," 17 C.F.R. § 230.502(c).

The court of appeals disregarded the plain language of 15 U.S.C. § 77r and Rule 506 in concluding that federal law preempts state registration requirements with respect to securities that merely purport to be covered securities. *See Risdall*, 733 N.W.2d at 832. The preemption provision of section 77r applies to "a security that * * * *is* a covered security."[4] 15 U.S.C. § 77r(a)(1)(A) (emphasis added). Additionally, under 15 U.S.C. § 77r(b)(4)(D), "[a] security is a covered security with respect to a transaction that *is exempt* from registration under this subchapter pursuant to * * * Commission rules or regulations issued under section 77d(2) of this title." (Emphasis added.) Finally, Rule 506 provides that the private offering exemption applies to "[o]ffers and sales of securities by an issuer *that satisfy the conditions*" set forth in the rule, 17 C.F.R. § 230.506(a) (emphasis added), and that "[t]o qualify for an exemption under this section, offers and sales *must satisfy all the terms and conditions* of §§ 230.501 and 230.502,"[5] 17 C.F.R. § 230.506(b) (emphasis added). Thus, the plain language of 15 U.S.C. § 77r and Rule 506 indicates

that federal law only preempts state registration requirements with respect to securities that actually qualify as federal covered securities.

## B.

Our plain language interpretation of 15 U.S.C. § 77r and Rule 506 is in accord with the decisions of the majority of courts that have considered this issue. In *Brown v. Earthboard Sports USA, Inc.*, for example, the United States Court of Appeals for the Sixth Circuit held "that NSMIA preempts state securities registration requirements only with respect to securities that actually qualify as 'covered securities' under federal law." 481 F.3d 901, 912 (6th Cir.2007). The Sixth Circuit observed that if it were "to hold that NSMIA preempts state regulation wherever offerings merely *purport* to be filed pursuant to a valid federal registration exemption, * * * state registration requirements could be avoided merely by adding spurious boilerplate language to subscription agreements suggesting that the offerings were 'covered.'" *Id.* at 911.

Similarly, the United States District Court for the Eastern District of Arkansas relied on a plain reading of 15 U.S.C. § 77r(a) in concluding as follows:

> The statute that sets forth the scope of federal preemption of state securities laws is limited; it only applies to state laws or regulations that directly or indirectly apply to a "covered security" or a security that "will be a covered security upon the completion of the transaction." Thus, the only way to assert federal preemption is to first show that an ex-

---

**4.** Likewise, Minn.Stat. § 80A.08 exempted from the Minnesota registration requirement a security that "is a federal covered security."

**5.** As noted earlier, one of the conditions of section 230.502 is that "neither the issuer nor

any person acting on its behalf shall offer or sell the securities by any form of general solicitation or general advertising." 17 C.F.R. § 230.502(c).

emption from federal registration actually applies.

*Hamby v. Clearwater Consulting Concepts,* 428 F.Supp.2d 915, 920–21 (E.D.Ark. 2006) (quoting 15 U.S.C. § 77r(a)(1)); *see also Grubka v. WebAccess Int'l, Inc.,* 445 F.Supp.2d 1259, 1270 (D.Colo.2006) ("Nowhere does the statute indicate that a security may satisfy the definition [of a covered security] if it is *sold pursuant to* a putative exemption. If Congress had intended that an offeror's representation of exemption should suffice it could have said so, but did not."); *Buist v. Time Domain Corp.,* 926 So.2d 290, 296 (Ala.2005) ("[U]nder Rule 506 exemption and preemption are functionally equivalent."); *Apollo Capital Fund, LLC v. Roth Capital Partners, LLC,* 158 Cal.App.4th 226, 70 Cal.Rptr.3d 199, 220 (2007) ("[W]e are persuaded that the analysis and reasoning in *Brown* [are] correct, and we adhere to its conclusion that NSMIA preempts state securities registration requirements only with respect to securities that actually qualify as 'covered securities' under federal law.").

In concluding that federal law preempts state registration requirements with respect to securities that merely purport to be covered securities, the court of appeals relied on *Pinnacle Communications International, Inc. v. American Family Mortgage Corp.,* 417 F.Supp.2d 1073, 1087 (D.Minn.2006), in which the United States District Court for the District of Minnesota held that "[w]hen an offering purports

to be exempt under federal Regulation D, any allegation of improper registration is covered exclusively by federal law." *Risdall,* 733 N.W.2d at 832. But the *Pinnacle* court offered no justification for its conclusion other than to cite *Temple v. Gorman,* 201 F.Supp.2d 1238, 1243–44 (S.D.Fla. 2002), and *Lillard v. Stockton,* 267 F.Supp.2d 1081, 1116 (N.D.Okla.2003). 417 F.Supp.2d at 1087. The court in *Lillard,* in turn, also relied on the decision in *Temple.* 267 F.Supp.2d at 1116.

 The United States District Court for the Southern District of Florida held in *Temple* that "[r]egardless of whether the private placement actually complied with the substantive requirements of Regulation D or Rule 506, the securities sold to Plaintiffs are federal 'covered securities' because they were sold pursuant to those rules." 201 F.Supp.2d at 1244. The court in *Temple* relied on a House of Representatives Commerce Committee report accompanying NSMIA. *Id.* at 1243 (citing H.R.Rep. No. 104–622, at 32 (1996), *as reprinted in* 1996 U.S.C.C.A.N. 3877, 3894–95). But "[w]hen a statute is clearly worded," as in this case, "we generally do not consider legislative history." [6] *Hutchinson Tech., Inc. v. Comm'r of Revenue,* 698 N.W.2d 1, 8 (Minn.2005). Consistent with the plain language of 15 U.S.C. § 77r and Rule 506 and with the decisions of the majority of courts that have considered this issue, we hold that federal law does

---

**6.** Even if we were to consider the Commerce Committee report, we would find that it supports our holding in this case. The drafters of the report explained that "securities sold in private transactions under [15 U.S.C. § 77d(2)] would be 'covered securities,' and thus preempted, if offered or sold *pursuant to* a Commission rule or regulation adopted under such section." H.R.Rep. No. 104–622, at 32, *as reprinted in* 1996 U.S.C.C.A.N. at 3894–95 (emphasis added). The *Temple* court concluded that securities that merely purport to

be exempt from registration are sold "pursuant to" an exemption, 201 F.Supp.2d at 1243–44, but "pursuant to" is defined as "[i]n compliance with," "in accordance with," "as authorized by," and "under," *Black's Law Dictionary* 1272 (8th ed.2004). In light of these definitions, the Commerce Committee report actually suggests that compliance with the private offering exemption is required for federal law to preempt Minnesota's registration requirements.

not preempt state registration requirements with respect to securities that purport to be, but are not in fact, federal covered securities.

## II.

Having concluded that federal law does not preempt state registration requirements with respect to securities that purport to be, but are not in fact, federal covered securities, we next address whether the sales under PPM1 and the offers under PPM2 can be integrated into a single offering for purposes of determining whether the state registration exemption applies. The issue we must resolve is whether a securities offer must result in a sale in order to be integrated under Minn. Stat. § 80A.15, subd. 2(h)(10), and Rule 502(a) of Regulation D, 17 C.F.R. § 230.502(a). If integration occurs, then respondents are not entitled to the state exemption provided in Minn.Stat. § 80A.15, subd. 2(h).

One of the conditions of Rule 502 is that "neither the issuer nor any person acting on its behalf shall offer or sell the securities by any form of general solicitation or general advertising." 17 C.F.R. § 230.502(c). Appellants concede that the funeral.com stock purchased under PPM1 was initially exempt from registration, but they argue that respondents' unlawful solicitations and advertising in connection with PPM2 retroactively rendered the exemption unavailable because PPM1 and PPM2 were part of a single offering under the integration doctrine. Respondents argue, in contrast, that the sales of stock under PPM1 cannot be integrated with the offers under PPM2 because no sales resulted from the latter. The court of appeals adopted the reasoning of respondents, stating in dicta that "[u]nder the plain language of the federal regulation, an offering under which no sales are made cannot be integrated with another offering under Regulation D." *Risdall,* 733 N.W.2d at 833.

The SEC has explained that [t]he integration doctrine seeks to prevent an issuer from improperly avoiding registration by artificially dividing a single offering into multiple offerings such that Securities Act exemptions would apply to the multiple offerings that would not be available for the combined offering. Revisions of Limited Offering Exemptions in Regulation D, Securities Act Release No. 8828, Investment Company Act Release No. 27,922, 72 Fed.Reg. 45,116, 45,129 (proposed Aug. 10, 2007). Minnesota Statutes § 80A.15, subd. 2(h)(10), incorporates Rule 502 as the statutory basis for the doctrine of integration in Minnesota, providing that "[t]he determination whether offers and sales made in reliance on the exemption set forth in paragraph (h) shall be integrated with offers and sales according to other paragraphs of this subdivision shall be made according to the integration standard set forth in Rule 502 of Regulation D." The Rule 502 integration standard reads as follows:

All sales that are part of the same Regulation D offering must meet all of the terms and conditions of Regulation D. Offers and sales that are made more than six months before the start of a Regulation D offering or are made more than six months after completion of a Regulation D offering will not be considered part of that Regulation D offering, so long as during those six month periods there are no offers or sales of securities by or for the issuer that are of the same or a similar class as those offered or sold under Regulation D, other than those offers or sales of securities under an employee benefit plan as defined in rule 405 under the Act * * *.

17 C.F.R. § 230.502(a). The Note to Rule 502(a) also sets forth the following five-factor test:

> The following factors should be considered in determining whether offers and sales should be integrated for purposes of the exemptions under Regulation D:
>
> (a) Whether the sales are part of a single plan of financing;
>
> (b) Whether the sales involve issuance of the same class of securities;
>
> (c) Whether the sales have been made at or about the same time;
>
> (d) Whether the same type of consideration is being received; and
>
> (e) Whether the sales are made for the same general purpose.

17 C.F.R. § 230.502(a) Note. The Note to Rule 502(a) cites Securities Act Release No. 4552 as the source of the five-factor test, 17 C.F.R. § 230.502(a) Note, and Release No. 4552 included the word "offerings" rather than the word "sales" in the first, second, third, and fifth factors of the test, Non–Public Offering Exemption, Securities Act Release No. 4552, 27 Fed.Reg. 11,316, 11,317 (Nov. 16, 1962). As included in the Note to Rule 502(a) of Regulation D, however, those factors are expressed with the word sales instead. 17 C.F.R. § 230.502(a) Note.

### A.

The starting point for determining whether a securities offer must result in a sale in order to be integrated is Minn.Stat. § 80A.15, subd. 2(h)(10), which is the statutory basis for integration in Minnesota and which incorporates the integration standard set forth in Rule 502. The paramount goal of statutory interpretation "is to ascertain and effectuate the intention of the legislature," and if the language of a statute is unambiguous, "the letter of the law shall not be disregarded under the pretext of pursuing the spirit." Minn.Stat. § 645.16 (2006). Minnesota Statutes § 80A.15, subd. 2(h)(10), provides that "[t]he determination whether *offers and sales* made in reliance on the exemption set forth in paragraph (h) shall be integrated with *offers and sales* according to other paragraphs of this subdivision shall be made according to the integration standard set forth in Rule 502 of Regulation D." (Emphasis added.) The use of the phrase "offers and sales," as opposed to the single word "sales," suggests that the Minnesota legislature did not intend to exclude offers that do not result in sales from being integrated. It appears, therefore, that respondents' unlawful offers in connection with PPM2 can be integrated with their sales of funeral.com stock to appellants under PPM1 based on the plain text of the state statute.

### B.

Because the state statute incorporates the federal integration standard, we must also examine Rule 502(a). The parties dispute whether Rule 502(a) requires that a securities offer result in a sale in order to be integrated. When interpreting a regulation, we first determine whether it "is clear or ambiguous on its face." *In re Cities of Annandale Maple Lake NPDES/SDS Permit Issuance for the Discharge of Treated Wastewater*, 731 N.W.2d 502, 516 (Minn.2007). If the words of the regulation are unambiguous, the regulations plain meaning " 'shall not be disregarded under the pretext of pursuing the spirit.' " *Id.* (quoting Minn.Stat. 645.16). "[A] regulation is ambiguous if it is unclear or reasonably susceptible to more than one reasonable interpretation." *Id.* at 517.

Rule 502(a) seems to contemplate the integration of offers that do not result in a sale, providing in a Note that "[t]he follow-

ing factors should be considered in determining whether *offers and sales* should be integrated for purposes of the exemptions under Regulation D." 17 C.F.R. § 230.502(a) Note (emphasis added). Furthermore, the safe harbor of Rule 502(a) applies to *"[o]ffers and sales"* that are made more than 6 months before the start or after the completion of a Regulation D offering. 17 C.F.R. § 230.502(a) (emphasis added). If the applicability of the Rule 502 integration standard were limited to offers that result in a sale, then the "offer" language used in Rule 502(a) and its Note would be superfluous.

On the other hand, because four of the five factors delineated in the Note to Rule 502(a) refer only to "sales" and the remaining factor refers to consideration "being received," 17 C.F.R. § 230.502(a) Note, the five factors cannot be applied as written to determine whether an offer that did not result in a sale should be integrated. Additionally, Rule 502(a) states that "[a]ll *sales* that are part of the same Regulation D offering must meet all of the terms and conditions of Regulation D," 17 C.F.R. § 230.502(a) (emphasis added), and the Note to Rule 502(a) states that "the determination as to whether *separate sales* of securities are part of the same offering (*i.e.*, are considered *integrated*) depends on the particular facts and circumstances," 17 C.F.R. § 230.502(a) Note (first emphasis added). We conclude that Rule 502(a) is ambiguous because it is "reasonably susceptible to more than one reasonable interpretation." *Annandale Maple Lake,* 731 N.W.2d at 517.

The five-factor test included in the Note to Rule 502(a) was previously set forth in Securities Act Release No. 4552, which used the word "offerings" rather than the word "sales." Non–Public Offering Exemption, Securities Act Release No. 4552, 27 Fed.Reg. at 11,317. When Regulation

D was published for comment, the SEC quoted the factors of Securities Act Release No. 4552 as the factors to be considered "in determining whether offers and sales * * * should be integrated" and noted that "[i]n those instances where the safe harbor provision is not available, the factors set forth in Securities Act Release No. 4552 discussed above would be applicable." Revision of Exemptions from Registration for Transactions Involving Limited Offers and Sales, Securities Act Release No. 6339, 46 Fed.Reg. 41,791, 41,797 (proposed Aug. 18, 1981). As included in the Note to Rule 502(a), however, the five-factor test includes the word "sales." Revision of Exemptions from Registration for Transactions Involving Limited Offers and Sales, Securities Act Release No. 6389, 47 Fed.Reg. 11,251, 11,264 (Mar. 16, 1982) (codified at 17 C.F.R. § 230.502(a)). We are unpersuaded by the conclusion of the court of appeals that "[s]uch a deliberate change in the language of the SEC's integration test cannot be dismissed as having 'no significance.'" *Risdall,* 733 N.W.2d at 833. If the modification of the five-factor test's language from "offerings" to "sales" was intended to preclude an offer that does not result in a sale from being integrated, then the phrase "offers and sales" would have been eliminated from the other portions of Rule 502(a) and its Note as well. We do not believe that the evolution of the five-factor test reflects an intention to limit the applicability of the integration test to offers that result in sales.

■ When an agency's regulation is ambiguous, "we will give deference to the agency's interpretation and will generally uphold that interpretation if it is reasonable." *Annandale Maple Lake,* 731 N.W.2d at 515. The SEC has indicated that the five-factor test set forth in Securities Act Release No. 4552, which used the word "offerings" rather than the word

"sales," remains the governing integration standard. As recently as August of 2007, the SEC explained, "In 1982, we included the five factors and established an integration safe harbor in Rule 502(a). We stated that the five factors relevant to the question of integration are [the five factors listed in Securities Act Release No. 4552]." Revisions of Limited Offering Exemptions in Regulation D, Securities Act Release No. 8828, Investment Company Act Release No. 27,922, 72 Fed.Reg. at 45,130. Likewise, the SEC has stated that Securities Act Release No. 4552 sets forth the prevailing five-factor test for integration. Sonnenblick, Parker & Selvers, SEC No-Action Letter, 1986 WL 66490, at *1 (available Jan. 1, 1986) ("The Division considers the factors enumerated in Securities Act Release No. 4552 to be relevant to a determination of whether a series of transactions must be integrated for purposes of registration under the 1933 Act.").[7] In light of the SEC's interpretation of Rule 502(a) and Securities Act Release No. 4552, we interpret the Note to Rule 502(a) as containing the same factors as Securities Act Release No. 4552. When the word "offerings," as is used in Securities Act Release No. 4552, is substituted for the word "sales" in the first, second, third, and fifth factors of the test set forth in the Note to Rule 502(a), much, though not all, of the ambiguity in the integration test disappears.

■■■ The language of Minn.Stat. § 80A.15, subd. 2(h)(10), suggests that the Minnesota legislature did not intend to exclude offers that do not result in sales from being integrated under Minnesota law, and the SEC has suggested that it did not intend to effect a change in the integration test when it substituted the word "sales" for the word "offerings" in the Note to Rule 502(a). Because the integration test of Rule 502, as incorporated in Minnesota law, is best interpreted as not containing a sales requirement, we hold that a securities offer need not result in a sale in order to be integrated.

### III.

Neither party sought review on the issue of whether the district court erred in concluding, as a matter of law, that PPM1 and PPM2 should be integrated under the five-factor test set forth in Securities Act Release No. 4552 and the Note to Rule 502(a) of Regulation D. Furthermore, the court of appeals did not consider the issue given its conclusions that federal law preempts appellants' state law claims and that, even if appellants' state law claims were not preempted, the offering under PPM2 could not be integrated with the sales under PPM1. Accordingly, we remand to the court of appeals for further proceedings.

Reversed and remanded.

---

**7.** Other courts have relied on the language of Securities Act Release No. 4552 rather than the language of the Note to Rule 502(a). In *SEC v. Cavanagh*, for example, the United States Court of Appeals for the Second Circuit quoted Securities Act Release No. 4552, not the Note to 17 C.F.R. § 230.502(a), as "[t]he SEC standard for integrating transactions." 445 F.3d 105, 112 n. 17 (2d Cir.2006). Likewise, in *Johnston v. Bumba*, the United States District Court for the Northern District of Illinois quoted Securities Act Release No. 4552 as the test "commonly used in determin-

ing whether apparently separate offerings should be treated as one integrated offering" and observed that Securities Act Release No. 4552 was "reprinted" in the Note to Rule 502. 764 F.Supp. 1263, 1272 (N.D.Ill.1991). *See also Donohoe v. Consol. Operating & Prod. Corp.*, 982 F.2d 1130, 1140 (7th Cir.1992); *SEC v. Ishopnomarkup.com, Inc.*, No. 04–CV–4057, 2007 WL 2782748, at *4 (E.D.N.Y. Sept. 24, 2007); *Argentinian Recovery Co. v. Bd. of Dirs. of Multicanal S.A.*, 331 B.R. 537, 547 (S.D.N.Y.2005).

MAGNUSON, C.J., not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.