Charles RISDALL, et al., Respondents,

v.

BROWN–WILBERT, INC.,
et al., Defendants,

Christopher C. Brown,
et al., Appellants.

No. A06–1233.

Court of Appeals of Minnesota.

Jan. 6, 2009.

Peter A. Koller, Moss & Barnett, P.A., Minneapolis, MN; and Scott D. Hillstrom, Guardian Law Group, LLC, Minneapolis, MN, for respondents.

George E. Antrim, III, George E. Antrim, III, PLLC, Minneapolis, MN; and Kay N. Hunt, Lommen Abdo Cole King Stageberg, P.A., Minneapolis, MN, for appellants.

Considered and decided by TOUSSAINT, Chief Judge; KLAPHAKE, Judge; and JOHNSON, Judge.

## OPINION

KLAPHAKE, Judge.

The Minnesota Supreme Court has directed us on remand to address the district court's summary judgment order concluding that two securities offerings issued by appellants Christopher Brown and funeral.com, inc. were integrated and thus not exempt from registration under Minnesota law. Minn.Stat. § 80A.08 (2006). *Risdall v. Brown–Wilbert, Inc.*, 753 N.W.2d 723 (Minn.2008) (*Risdall II*). Because we conclude that these offerings are integrated under the five-factor test set forth in the Note to Rule 502(a), 17 C.F.R. § 230.502(a), we affirm.

## FACTS

In March 2000, appellants sold shares of funeral.com stock to respondents Charles Risdall, Len Dozier, and Mary Risdall[2] that purported to be exempt from registration under Regulation D, 17 C.F.R. § 230.501–.508 (2008), pursuant to a private placement memorandum (PPM1). Two months later, appellants issued a second private placement memorandum (PPM2). In June 2000, appellants placed information relating to PPM2 on two websites and e-mailed this information not only to current investors, but also to a general listing of funeral home directors, all in violation of Regulation D's prohibition against general solicitation and advertising. Because of this violation, the shares offered under PPM2 were not exempt from registration under federal law. However, no sales resulted from this second offering, and appellants removed the solicitation from the Internet at the SEC's direction.

In 2003, respondents sued appellants, alleging various causes of action, including securities fraud, and seeking damages and rescission of their stock purchases under Minn.Stat. § 80A.23, subd. 1 (2006).[3] This provision permits a purchaser to sue for rescission or damages if stock is sold in violation of Minn.Stat. § 80A.08, which makes it unlawful to sell securities in Minnesota, unless they are (1) registered, (2) exempt from registration under Minn. Stat. § 80A.15, or (3) federal covered securities. Minn.Stat. § 80A.15, subd. 2(h), specifically incorporates the conditions provided by Rules 501 to 503 of Regulation D, which prohibit general solicitation or advertising by issuers claiming exemption from registration.

The district court granted summary judgment to respondents, concluding that (1) federal law did not preempt respondents' claim under the Minnesota statute; (2) the sales of PPM1 and the offers of PPM2 were integrated into a single offering; and (3) the advertising of PPM2 nullified the exemption for the sales under PPM1. This court reversed, deciding only that federal law preempted respondents' state law claims. *Risdall v. Brown–Wilbert, Inc.*, 733 N.W.2d 827, 834 (Minn.App. 2007) (*Risdall I*). Respondents petitioned the supreme court for review. On July 31, 2008, the supreme court concluded that "federal law does not preempt state registration requirements with respect to securities that purport to be, but are not in fact, federal covered securities." *Risdall II*, 753 N.W.2d at 730–31. "[A] security is a covered security with respect to a transaction that *is exempt* from registration under [federal statute, rules and regulations.]" *Id.* at 728 (quotation omitted) (emphasis added).

■ The second question before the supreme court concerned the propriety of integrating the sales under PPM1 and the offers under PPM2 into a single offering. "Integration" is a doctrine that seeks to prevent unscrupulous issuers from improperly avoiding registration by making multiple offerings that fit within the exemption guidelines when a single offering would not. *Id.* at 731. If an issuer makes multiple offerings of the same or a similar class of stock during the six months before or after making an exempt offering, all of

---

2. Mary Risdall, now deceased, is represented by John Risdall, her personal representative.

3. Although Minn.Stat. §§ 80A.01–.31 (2006) were repealed effective August 1, 2007, these sections continue to govern all actions or proceedings that were pending on August 1, 2007, or based on conduct occurring before August 1, 2007, and therefore govern this case. Minn.Stat. § 80A.90(a) (2006); *see also* 2006 Minn. Laws ch. 196, art. 1 § 50(a).

those offerings may be integrated and treated as a single sale. If they are integrated, each offering must meet all of the terms and conditions of Regulation D, including restrictions on dollar amounts, number of purchasers, types of solicitations, and advertising. If any one of them violates any term or condition of Regulation D, the exemptions from federal registration are not available to any of them. 17 C.F.R. § 230.502.

Relying on the language of the Note to 17 C.F.R. § 230.502(a) (the integration rule), which speaks only of "sales," and not of "offers" in delineating the factors used to determine integration, appellants claimed that PPM1 and PPM2 could not be integrated because PPM2 was only an offering that resulted in no sales. After analyzing the history of the federal rule and the language of the Minnesota statute governing integration, the supreme court concluded that under Minnesota law, "a securities offer need not result in a sale in order to be integrated." *Risdall II*, 753 N.W.2d at 734.

The supreme court did not resolve the question of whether PPM1 and PPM2 should be integrated "under the five-factor test set forth in Securities Act Release No. 4552 and the Note to Rule 502(a) of Regulation D." *Id.* That is the question before this court.

## ISSUE

Did the district court err by concluding as a matter of law that PPM1 and PPM2 were integrated for purposes of determining whether the securities were exempt from registration?

## ANALYSIS

*Standard of Review*

Summary judgment must be granted if based on the record before the court, there are no genuine issues of material fact and either party is entitled to judgment as a matter of law. Minn. R. Civ. P. 56.03. This court reviews the evidence in the light most favorable to the party against whom judgment was granted. *Fabio v. Bellomo,* 504 N.W.2d 758, 761 (Minn.1993). There are no genuine issues of material fact if the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *DLH, Inc. v. Russ,* 566 N.W.2d 60, 69 (Minn.1997) (quotation omitted).

■ The party claiming an exemption from registration has the burden of proof and may not rely on conclusory statements. *Johnston v. Bumba,* 764 F.Supp. 1263, 1273 (N.D.Ill.1991). The nonmoving party to a summary judgment motion must produce sufficiently probative evidence on elements essential to its case. *DLH,* 566 N.W.2d at 71.

*Five–Factor Test*

According to the Note to Rule 502(a), the following factors must be considered in order to determine if offers and sales should be integrated for purposes of an exemption:

(a) Whether the sales are part of a single plan of financing;

(b) Whether the sales involve issuance of the same class of securities;

(c) Whether the sales have been made at or about the same time;

(d) Whether the same type of consideration is being received; and

(e) Whether the sales are made for the same general purpose.

17 C.F.R. § 230.502(a) Note. Minnesota applies this same standard for determining whether sales should be integrated for purposes of an exemption. Minn.Stat. § 80A.15(h)(10).

■ There appears to be no special weight given to any of the factors; a series

of sales or offers can be integrated despite lack of evidence of all five factors. *See S.E.C. v. Murphy*, 626 F.2d 633, 645–46 (9th Cir.1980) (finding integration despite lack of unity of time).

### Single Plan of Financing

■■■ A single plan of financing exists when a subsequent offering is directly related to an initial offering, *Argentinian Recovery Co. v. Bd. of Directors of Multicanal S.A.*, 331 B.R. 537, 547 (S.D.N.Y. 2005); or where there is a common business venture, *Johnston*, 764 F.Supp. at 1272; or where an issuer anticipates the need for capital from subsequent offerings in order to remain in business, *Walker v. Montclaire Hous. Partners*, 736 F.Supp. 1358, 1365 (M.D.N.C.1990). There is no single plan of financing where offerings are for different projects designed to "stand or fall on [their] own merits." *Donohoe v. Consol. Operating & Prod. Corp.*, 982 F.2d 1130, 1140 (7th Cir.1992). Equally, the issuer can show that there was no single plan of financing by demonstrating that no subsequent offering was contemplated at the time of each offering. *Livens v. William D. Witter, Inc.*, 374 F.Supp. 1104, 1107 (D.Mass.1974).

■■■ Appellants' assertion that they did not contemplate a second offering when the first was issued argues against integration. But PPM1 states that "[e]ven if we raise the maximum amount [of $3.6 million,] we will need to raise additional capital in the future in order to complete" the proposed objectives. PPM2 contains a similar statement. Appellants rely on an affidavit filed by appellant Brown, in which he asserted that appellants did not intend to evade registration and that they thought each offering would be enough. A self-serving affidavit that contradicts other testimony is not sufficient to create a genuine issue of material fact. *Banbury v. Omnitrition Int'l., Inc.*, 533 N.W.2d 876, 881 (Minn.App.1995). Appellants have the burden of proving the right to an exemption; a self-serving affidavit does not fulfill that burden. *See Richie v. Paramount Pictures Corp.*, 544 N.W.2d 21, 26 (Minn. 1996) (directing court to view evidence on summary judgment motion through the "prism of the substantive evidentiary burden") (quotation omitted). The district court's conclusion that PPM1 and PPM2 were a single plan of financing is supported by the evidence.

### Same Class of Securities

Both offerings involve the same class of securities, common stock. *See Murphy*, 626 F.2d at 645–46 (limited partnerships as same class of securities); *Walker*, 736 F.Supp. at 1364–65 (limited partnerships were same class of securities, despite designation of one as a "special participant interest" and differing tax consequences). The district court's conclusion is supported by the record.

### Sales Made at or about the Same Time

■■■ Generally, offerings made within six months of each other are deemed to have satisfied the requirement of sales made at or about the same time. *Bumba*, 764 F.Supp. at 1272 (offerings within six months of one another with sales completed within a 12–month period satisfied factor); *Walker*, 736 F.Supp. at 1365 (second offering commenced immediately following the end of first offering); *Argentinian Recovery*, 331 B.R. at 547–48 (second offering directly followed first); *see also Murphy*, 626 F.2d at 646 (dismissing separation in time as "heavily outweighed by other considerations"); *but see Livens*, 374 F.Supp. at 1107 (declining to find securities issued at same time when issued over a three-year period). Again, we are satisfied that the district court's conclusion is correct.

### Same Type of Consideration

Both parties acknowledge that the same type of consideration-cash-was paid or solicited for both offerings.

*Same General Purpose*

 Appellants argue that the offers were not made for the same general purpose, because the first offer included an intent to repay appellant Brown. The district court noted a single general purpose: "to start Funeral.com."

Both PPMs included a "Use of Proceeds" statement. In PPM1, the statement is:

> We intend to use the proceeds from the Offering to fund marketing and promotional activities, the further development and maintenance of our web-site, the purchase of necessary computer and office equipment, content acquisition and for general working capital. *We intend to use $375,000 of the proceeds from the sale of the minimum offering amount to repay the promissory note payable to [appellant Brown].* While the foregoing represents our current estimates as to the use of proceeds, we anticipate that our actual uses and allocations of the proceeds may vary, possibly substantially, from our current budget as a result of unforeseen developments.

(Emphasis added.)

PPM2 states its Use of Proceeds as follows:

> We intend to use the proceeds from the offering to fund marketing and promotional activities, to further develop and maintain our web-site, to purchase necessary computer and office equipment and for general working capital. While the foregoing represents our current estimates as to the use of proceeds, we anticipate that our actual uses and allocations of the proceeds may vary, possibly substantially, from our current

budget as a result of unforeseen developments.

We are satisfied that this minor difference in purpose, the repayment of Brown, is not determinative. *See Donohoe,* 982 F.2d at 1140 (opining that "same general purpose" may be satisfied by "to drill for oil"); *Murphy,* 626 F.2d at 646 (finding offerings were made for the same general purpose "to give dollars to the cable operating company that could be used at a cost they could live with"); *Bumba,* 764 F.Supp. at 1272 (partnerships "engaged in the same business in the same market"); *Walker,* 736 F.Supp. at 1365 (concluding that same general purpose demonstrated by purpose statement in each offering to produce "the total capitalization of the partnership" to invest as principal in four other partnerships to own housing units); *Argentinian Recovery,* 331 B.R. at 548 (same general purpose where offers were to implement the debt restructure). The broad statements in appellants' "Use of Proceeds" descriptions satisfy the same general purpose factor.

*Appellate Attorney Fees*

By order of September 24, 2008, the supreme court remanded respondents' request for appellate attorney fees to this court for determination.

The purchaser of securities sold in violation of Minn.Stat. § 80A.08 is entitled to recover reasonable attorney fees in an action for rescission or damages. Minn.Stat. § 80A.23, subd. 1. We therefore direct respondents to submit documentation in support of their fee request in accordance with Minn. R. Civ.App. P. 139.06, subd. 1.

## DECISION

 Appellants, who bear the burden of proving the existence of an exemption from registration, have raised no genuine issues of material fact. Having reviewed

the evidence in the light most favorable to appellants, we conclude that the district court did not err by deciding as a matter of law that PPM1 and PPM2 were integrated for the purposes of determining whether they were exempt from registration.

Respondents are entitled to appellate attorney fees upon submission of supporting documentation in accordance with Minn. R. Civ.App. P. 139.06, subd. 1.

**Affirmed; motion granted.**