**BANKCHEROKEE, Respondent,**

v.

**INSIGNIA DEVELOPMENT, LLC, Defendant,**

**Jeffrey M. Schoenwetter, Appellant.**

**No. A09–876.**

Court of Appeals of Minnesota.

March 16, 2010.

John F. Kelly, Thomas M. Scott, Campbell Knutson, Eagan, MN, for respondent.

Charles J. Schoenwetter, Michael R. Carey, Bowman and Brooke LLP, Minneapolis, MN, for appellant.

Considered and decided by ROSS, Presiding Judge; KALITOWSKI, Judge; and STAUBER, Judge.

## OPINION

KALITOWSKI, Judge.

This is an appeal from summary judgment and denial of appellant's motion to amend his answer. Appellant argues that (1) the district court erred in concluding that his motion to amend his answer to assert the defense of fraud in the execution could not withstand summary judgment; (2) the district court erred in rejecting his additional defenses on summary judgment; and (3) even if summary judgment was proper, the amount of damages is erroneous.

## FACTS

Appellant Jeffrey Schoenwetter is the Chief Manager of Insignia Development, LLC (Insignia), a real-estate development company, and has been active in the real-estate industry for more than 20 years. Respondent BankCherokee is a private, family-owned bank.

In 2004, appellant and his business partner, David Sebold, took a $200,000 line-of-credit loan from respondent on behalf of Insignia and signed personal guaranties for the loan. The loan amount was doubled in 2005, and appellant and Sebold again signed personal guaranties. After a dispute in 2006 between appellant and Sebold, during which Insignia failed to make payments on the loan, appellant became the sole owner of Insignia. In September of 2007, appellant, on behalf of Insignia, paid the outstanding accrued interest of $34,325.43, contracted with respondent to restructure the loan, and signed a renewal promissory note. Appellant also signed a personal guaranty for the loan. Insignia defaulted on the promissory note in December 2007, and neither appellant nor Insignia has paid the amounts due.

In April 2008, respondent sued to enforce the terms of the September 2007

promissory note and personal guaranty. Appellant answered the complaint, denying that he had an obligation to pay the outstanding principal and interest on the loan and asserting affirmative defenses, including estoppel. Insignia separately answered and denied the allegations in the complaint but subsequently was declared bankrupt; its obligation on the promissory note was discharged through the bankruptcy. In October 2008, respondent moved for summary judgment against appellant. Appellant opposed the summary-judgment motion and moved to compel discovery and to amend his answer to add affirmative defenses, including fraud in the execution of the personal guaranty. The district court granted respondent's summary-judgment motion and denied appellant's motions. The district court subsequently awarded respondent attorney fees and costs and ordered entry of a personal judgment against appellant.

## ISSUES

1. Did the district court err in denying appellant's motion to amend his answer to assert the defense of fraud in the execution?

2. Did the district court err in rejecting appellant's defenses on summary judgment?

3. If the decision to grant summary judgment was proper, is the amount of damages erroneous?

## ANALYSIS

### I.

The district court rejected appellant's motion to add an affirmative defense of fraud in the execution, concluding that "there is no question that [appellant] had the opportunity to know that he was signing a personal guaranty." Appellant argues that the district court erred in denying his motion. We disagree.

■■■ This court generally reviews a district court's decision regarding amendment of a pleading for an abuse of discretion. *Fabio v. Bellomo,* 504 N.W.2d 758, 761 (Minn.1993). But a district court can deny a motion to amend when the additional claim cannot withstand summary judgment. *Ag Servs. of America, Inc. v. Schroeder,* 693 N.W.2d 227, 235 (Minn. App.2005). Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that either party is entitled to a judgment as a matter of law." Minn. R. Civ. P. 56.03. Here, the district court determined that appellant's claim of fraud in the execution could not withstand summary judgment. We review this determination de novo. *See STAR Ctrs., Inc. v. Faegre & Benson, L.L.P.,* 644 N.W.2d 72, 77 (Minn.2002) (stating that whether a genuine issue of material fact exists is reviewed de novo).

■■■ A claim of fraud in the execution requires proof that (1) a party knowingly misrepresented the character or essential terms of a proposed contract; (2) the party intended the misrepresentation to induce another to manifest assent to the contract; (3) the other party neither knew nor had reasonable opportunity to know of the character or essential terms of the proposed contract; and (4) the misrepresentation caused the other party to manifest assent to the contract. *See Valspar Refinish, Inc. v. Gaylord's, Inc.,* 764 N.W.2d 359, 368 (Minn.2009) (stating elements of common-law fraud); Restatement (Second) of Contracts § 163 (1981) (stating elements of fraud in the execution). If fraud in the execution is proved, the result is "no contract at all." Restatement (Second) of Contracts § 163 cmt. a (1981).

██ Fraud in the execution may occur when "a party secretly substitute[s] one type of document for another." *Hetchkop v. Woodlawn at Grassmere, Inc.*, 116 F.3d 28, 32 (2d Cir.1997). But one party's misrepresentation as to the nature of a proposed contract does not amount to fraud in the execution if the other party had a reasonable opportunity to acquaint himself with the contract and failed to do so. *See Minneapolis, St. Paul & Saulte Ste. Marie Ry. v. Chisholm*, 55 Minn. 374, 377, 57 N.W. 63, 64 (1893) (requiring that party claiming "fraud in the execution" be "reasonably free from negligence"); Restatement (Second) of Contracts § 163 cmt. b (1981) (stating that manifestation of assent is effective if recipient had a reasonable opportunity to know the character or essential terms of the proposed contract); *see also Davis v. G.N. Mortgage Corp.*, 396 F.3d 869, 887 (7th Cir.2005) (holding that claim of fraud in the execution failed as a matter of law because claimants could not establish that reliance on alleged misrepresentation was justified); *Rosenthal v. Great W. Fin. Sec. Corp.*, 14 Cal.4th 394, 58 Cal.Rptr.2d 875, 926 P.2d 1061, 1078 (1996) (holding that claim of fraud in the execution requires that claimant not have "acted in an objectively unreasonable manner" in failing to "acquaint himself or herself with the contents of a written agreement before signing it"). This is consistent with the common-law requirement that a party's reliance on an allegedly false representation be reasonable. *See Valspar Refinish*, 764 N.W.2d at 369 (affirming dismissal of fraud claim in part on conclusion as a matter of law that claimant could not establish reasonable reliance on allegedly false representation).

██ Appellant claims that he was told he would be signing a corporate guaranty, not a personal guaranty; that he was handed and signed a document that he believed to be a corporate guaranty; and

that, at the signing, respondent's representative must have substituted a personal guaranty for the corporate guaranty appellant thought he was signing. He asserts that his case is similar to the document-switching scenario presented in *Hetchkop v. Woodlawn at Grassmere, Inc.* We disagree.

*Hetchkop* involved employee-benefit funds seeking to collect union contributions from a construction company under a collective bargaining agreement between the construction company and a local carpenters union. 116 F.3d at 29. The construction company defended against the claim by asserting that the agreement had been obtained by fraud in the execution because a union representative surreptitiously switched the agreement that the construction company's representative had agreed to sign for one that he had rejected. *Id.* at 29–32. The Second Circuit Court of Appeals reversed summary judgment in favor of the union, emphasizing that the union's records corroborated the claim that the agreement was expected to be different from the one actually signed. *Id.* at 33–34. There also was evidence tending to indicate that the union representative had an opportunity to substitute a different agreement after the construction-company representative's review and that the construction-company representative only saw the signature page and did not have an opportunity to confirm that the document he was signing was the same as the one he had reviewed. *Id.*

Here, appellant has put forth no evidence corroborating his claim. Appellant provides nothing more than conjecture as to how or when the representative of respondent could have substituted one document for the other. And the document here is unambiguously a personal guaranty. The document is entitled "GUARANTY"; appellant is listed at the top of the

document as "GUARANTOR"; appellant initialed each page of the document; and appellant signed his name at the end of the document, below the word "GUARANTOR" and above the word "Individually." The clear indications on every page of the document that appellant initialed and signed preclude the possibility that he could not have known what he was signing, particularly in light of the undisputed evidence of his extensive experience with similar contracts and the parties' history of using essentially identical personal guaranties. *See Oakwood Mobile Homes, Inc. v. Barger,* 773 So.2d 454, 461 (Ala.2000) (holding that fraud-in-the-execution claim failed as a matter of law because the alleged misrepresentation would have been "apparent on the face of the document itself"); *Rosenthal,* 58 Cal.Rptr.2d 875, 926 P.2d at 1080 (noting, in rejecting fraud-in-the-execution claim, that the contract at issue was brief, listed the operative language in bold print, and included a bold-print reminder of the operative language "[i]mmediately above the signature line"). In addition, in the face of the actual document, appellant's uncorroborated self-serving statement does not create a genuine issue of material fact. *See Risdall v. Brown–Wilbert, Inc.,* 759 N.W.2d 67, 72 (Minn.App.2009) ("A self-serving affidavit that contradicts other testimony is not sufficient to create a genuine issue of material fact."), *review denied* (Minn. Mar. 17, 2009).

Because the personal guaranty and the undisputed evidence establish that appellant had a reasonable opportunity to know what he was signing, the district court properly concluded that appellant's affirmative defense of fraud in the execution would fail on the merits, and thus did not err in denying appellant's motion to add the meritless affirmative defense.

Finally, we note that appellant, in support of his defense of fraud in the execution, sought discovery of evidence pertaining to certain interactions between respondent and the Federal Deposit Insurance Corporation during 2008. Appellant argued that summary judgment was premature without that discovery and requested that the district court compel discovery of the evidence. We conclude that the district court's decision to reject those arguments was well within its broad discretion, particularly in light of its proper decision that the fraud-in-the-execution claim could not proceed. *See Shetka v. Kueppers, Kueppers, Von Feldt & Salmen,* 454 N.W.2d 916, 921 (Minn. 1990) (stating that discovery rulings are reviewed for an abuse of discretion).

## II.

Appellant also argues that the district court erred in rejecting his various defenses on summary judgment. On appeal from summary judgment, we review de novo whether there are any genuine issues of material fact and whether the district court erred in its application of the law. *State by Cooper v. French,* 460 N.W.2d 2, 4 (Minn.1990).

■ Appellant first argues that the district court erred in rejecting his defenses of unilateral and mutual mistake, no meeting of the minds, and contract modification on the ground that the defenses were barred by Minn.Stat. § 513.33. Statutory interpretation presents a question of law subject to de novo review. *City of W. St. Paul v. Krengel,* 768 N.W.2d 352, 356 (Minn.2009).

When interpreting a statute, our goal is to ascertain and effectuate legislative intent. Minn.Stat. § 645.16 (2008). If a statute's words are clear and unambiguous as applied to an existing situation, we construe the words according to their common and approved usage. Minn.Stat. § 645.08 (2008). A statute is ambiguous if it is

reasonably susceptible to more than one interpretation. *Am. Family Ins. Group v. Schroedl,* 616 N.W.2d 273, 277 (Minn.2000).

Section 513.33 provides that "[a] debtor may not maintain an action on a credit agreement unless the agreement is in writing, expresses consideration, sets forth the relevant terms and conditions, and is signed by the creditor and the debtor." Minn.Stat. § 513.33, subd. 2. A "debtor" is defined as "a person who obtains credit or seeks a credit agreement with a creditor or who owes money to a creditor," and a "creditor" is one "who extends credit under a credit agreement with a debtor." *Id.,* subd. 1(2), (3). A "credit agreement," as that phrase is used in section 513.33, refers not only to an agreement to lend money but also to an agreement to "forbear repayment of money, goods, or things in action, to otherwise extend credit, or to make any other financial accommodation." *Id.,* subd. 1(1).

Here, the oral agreements appellant sought to prove include promises, allegedly made prior to the September 2007 signing of the personal guaranty at issue here, that respondent would (1) satisfy any default on the loan by collecting against other developments' equity before enforcing any guaranty against appellant; (2) allow Insignia and appellant a cure period for any defaults that would last until the real-estate market recovered; and (3) accept a corporate guaranty, rather than appellant's personal guaranty, in restructuring the loan. All of these agreements amount to promises to forbear repayment of money or make some other financial accommodation and, therefore are "credit agreements" within the meaning of section 513.33.

Appellant contends, however, that his defenses of unilateral and mutual mistake, no meeting of the minds, and contract modification, which are contingent on proof of the oral agreements, do not fall within the purview of section 513.33. We disagree.

■ Appellant points out that the statute precludes use of oral credit agreements to "maintain an action," arguing that this language applies only to direct claims, not affirmative defenses. But the statute does not define the term "action." And although the term "action" commonly refers to a judicial proceeding involving a claim for damages, that term has many meanings and is not incompatible with the concept of an affirmative defense. For several reasons, we conclude that an "action," as that term is used in section 513.33, may reasonably encompass an affirmative defense.

■ First, an affirmative defense is akin to a plaintiff's original claim or a defendant's counterclaim, because it involves a defendant's affirmative "assertion of facts and arguments." *Black's Law Dictionary* 482 (9th ed. 2009). Although the purpose of an affirmative defense is to defeat another claim, rather than seek damages, assertion of an affirmative defense nonetheless requires the defendant to maintain the assertion by proffering evidence to satisfy the burden of proof. *See MacRae v. Group Health Plan, Inc.,* 753 N.W.2d 711, 716 (Minn.2008) (stating that a party asserting an affirmative defense has the burden of proving the defense's elements).

Second, such an interpretation is consistent with the statute's broad application. The statute precludes an "action" on a broad range of agreements unless they meet the statute's writing and signature requirements. Minn.Stat. § 513.33, subd. 2. Among the agreements subject to those requirements are many that commonly would serve as the basis for affirmative defenses, such as agreements to "forbear repayment of money" or make some "other financial accommodation." Minn.Stat. § 513.33, subd. 1(1); *see also Schroedl,* 616

N.W.2d at 277 (requiring that a statute be read "as a whole" and "in light of the surrounding sections").

Finally, we note that the supreme court has implicitly recognized that section 513.33 applies to affirmative defenses. In *Rural Am. Bank of Greenwald v. Herick-hoff*, the supreme court applied section 513.33 to a defense of breach of contract and held that the loan agreement on which the breach-of-contract defense was based qualified as a "financial accommodation" within the meaning of section 513.33. 485 N.W.2d 702, 705–08 (Minn.1992) (noting that the legislature intended for the statute to apply broadly to protect lenders from having to litigate claims of oral promises). The supreme court determined that the defense was permissible, however, because the loan agreement satisfied the statute's requirements. *Id.* at 708.

We thus conclude that the term "action" as it is used in section 513.33 reasonably encompasses an affirmative defense. Any party asserting the existence of a "credit agreement" must comply with the writing and signature requirements of section 513.33, regardless of the type of claim the agreement is alleged to support. Section 513.33, therefore, bars appellant's defenses of unilateral and mutual mistake, no meeting of the minds, and contract modification, which are based solely on alleged oral "credit agreements" and fail as a matter of law.

Appellant also challenges the district court's rejection of his defenses of promissory and equitable estoppel based on the same alleged oral promises, arguing that there are genuine issues of material fact relevant to those defenses. But while the district court did not apply section 513.33 to appellant's estoppel defenses, an oral promise that constitutes a "credit agreement" under section 513.33 cannot be enforced under a theory of promissory estoppel. *Greuling v. Wells Fargo Home*

*Mortgage,* 690 N.W.2d 757, 761–62 (Minn. App.2005). Therefore, in light of our conclusion that section 513.33 applies to affirmative defenses, summary judgment was also appropriate on appellant's estoppel defenses.

Moreover, estoppel claims require proof that one party reasonably relied on statements or promises by the other party, and summary judgment is proper if the record reflects a failure of proof as to the reasonableness of the reliance. *Nicollet Restoration, Inc. v. City of St. Paul,* 533 N.W.2d 845, 848 (Minn. 1995). Reliance on an oral representation is unjustifiable as a matter of law if a written contract provision explicitly states a fact contradictory to the claimed oral misrepresentation. *Johnson Bldg. Co. v. River Bluff Dev. Co.,* 374 N.W.2d 187, 194 (Minn.App.1985), *review denied* (Minn. Nov. 18, 1985). Because it is undisputed that the oral representations on which appellant's estoppel arguments depend predate the September 2007 signing of the personal guaranty, the district court did not err in concluding that appellant's estoppel defenses failed as a matter of law for lack of evidence of reasonable reliance.

### III.

Finally, appellant contends that even if summary judgment was proper, the district court erroneously calculated damages. He argues, based on a limitation contained in the personal guaranty, that the judgment for the amount owing on the loan should be reduced by the $34,325.43 he paid in early September 2007. We disagree.

Construction of an unambiguous contract presents a question of law subject to de novo review. *See Denelsbeck v. Wells Fargo & Co.,* 666 N.W.2d 339, 346 (Minn.2003).

The guaranty provides: "GUARANTY IS LIMITED TO 100% OF THE CURRENT OUTSTANDING BALANCE. THE AMOUNT OF THE GUARANTY WILL DECREASE UPON RECEIPT OF EACH PAYMENT RECEIVED." Appellant contends that the September 2007 payment was posted after the effective date of the guaranty and, therefore, should have been credited toward the outstanding balance. But the language of the limitation plainly indicates that the outstanding balance would be reduced by any payments made toward the outstanding balance. And it is undisputed that the September 2007 payment was made to pay off the accrued interest, leaving the outstanding balance at $399,999.95, as represented in the guaranty, rather than as a payment toward the outstanding balance represented in the guaranty. Accordingly, the district court properly did not deduct the September 2007 payment from the outstanding balance on which it issued judgment.

## DECISION

The district court properly decided that appellant's claim of fraud in the execution of the personal guaranty could not survive summary judgment based on the undisputed evidence demonstrating that appellant had a reasonable opportunity to know that he was signing a personal guaranty. The district court also properly granted summary judgment on appellant's affirmative defenses, all of which are barred by Minn. Stat. § 513.33, subd. 2, because they are based on alleged oral credit agreements. And the district court correctly calculated damages based on the outstanding loan balance.

**Affirmed.**